ZEBRASKY ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE.

(No. 83AP-1066—Decided October 11, 1984.)

*Michael F. Colley Co., L.P.A., Mr. Dana Deshler* and *Mr. Frank A. Ray,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Susan M. Sullivan,* for appellee.

---

McCORMAC, P.J. Plaintiffs-appellants, David S. and E. Victoria Zebrasky, are appealing the judgment of the Court of Claims of Ohio that sustained defendant-appellee's, Department of Transportation's, motion for summary judgment.

Plaintiff David Zebrasky was injured while driving a bus on I-70 in Columbus, Ohio, when a tire was dropped by an unknown person from an overhead walkway known as the Sixth Street pedestrian bridge which traverses I-70 near Grant Avenue. The tire penetrated the windshield of said bus.

Defendant submitted, with its motion for summary judgment, an affidavit of Walter J. Jestings, Assistant Engineer of Bridges, Detail Design in the Ohio Department of Transportation's Bureau of Bridges and Structural Designs, who stated that he was familiar with the design and plans of the bridge which were attached to his affidavit; that the bridge was built in 1963; that there was a five-foot two-inch chain link fence on a six-inch concrete curb for a total height above the walkway surface of five feet eight inches along the sides of the walkway; that there were also railings on the top of the fences; that the minimum height of a railing above the sidewalk, required by Ohio Specifications for Highway Structures, is three feet two inches; that the minimum height of a sidewalk railing, provided in the National Bridge Design Specification that was published by the American Association of State Highway Officials, was three feet less one-half the horizontal width of the top rail, but in no case less than two feet six inches; and that the fence and railing met and exceeded contemporaneous safety standards.

Plaintiffs filed a memorandum in opposition to defendant's motion for summary judgment, to which was attached a liability research analysis for use in the trial of the case of *Showalter* v. *Pennsylvania Turnpike Commission*, an unreported Pennsylvania trial court case by Dr. Robert Brenner, President of the Institute for Safety Analysis. This research analysis was not properly before the court pursuant to Civ. R. 56 because the analysis was not presented in affidavit form, but as indicated hereafter summary judgment was appropriate even if Dr. Brenner's affidavit had been filed.

Brenner's analysis was addressed to a case where a rock was thrown from an overhead bridge on the Pennsylvania Turnpike, where no protective screening was provided on such bridge, where three other incidents of objects being thrown from overhead bridges in the immediate area of the overpass occurred on the same day as the incident, and where thousands of incidents of objects being thrown from overhead structures onto passing vehicles on the road below have been reported in Pennsylvania. The analysis concluded that bridges over highways, which do not have protective screening to prevent objects being thrown by pedestrians onto traffic below, are defective in design.

Plaintiffs' only assignment of error is that the trial court erred in granting defendant's motion for summary judgment, where genuine issues of material fact were presented regarding defendant's negligence in the design and construction of a highway bridge.

Plaintiffs' first argument is that, in an action alleging negligence in the design and construction of a highway bridge, the evidence that the bridge design complied with industry standards when constructed is not, standing alone, sufficient to preclude a finding of negligence and to support summary judgment.

The pertinent part of the trial court's judgment entry sustaining defendant's motion for summary judgment is as follows:

"The defendant's motion for summary judgment is supported by evidence

according to rule, the plaintiff has not entered into the record any evidence to counter defendant's evidence as to maintenance and design and it was erected with a parapet and fence at least five feet-eight, (5'-8") high from the sidewalk level. Plaintiffs' response is totally argumentative."

The trial court cited Jestings' affidavit and the attached plans of the bridge as defendant's supporting evidence to support its decision.

Pertinent parts of the syllabus of *Witherspoon v. Haft* (1952), 157 Ohio St. 474 [47 O.O. 350], are as follows:

"1. Customary conduct or methods do not always furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"2. Among such other circumstances to be so weighed and considered are any serious danger involved as a consequence of a defendant's conduct and the practicability of such defendant avoiding or guarding against such danger."

Defendant not only complied with the industry standard but almost doubled the height of the railing and added a chain fence. The question which confronted the trial judge was not that of a standard of care but, rather, the question of whether, under the facts shown by Jestings' affidavit supplied by defendant, defendant's design of the bridge fell below the standard of ordinary care because it failed to protect plaintiff against damage arising from arguably foreseeable criminal conduct.

Protective screening was provided by defendant that was five feet eight inches from the walkway. The fence provided would be adequate to protect small children from falling from the bridge and motorists beneath from objects ac-cidentally falling off the walkway. It would only be possible for an older person with the height and strength to lift the tire used over the fence to throw it onto I-70 below such bridge. Hence, the safeguards were adequate to protect users of the highway and plaintiff against foreseeable hazards other than intentional criminal acts.

R.C. 2903.13 provides as follows:

"(A) No person shall knowingly cause or attempt to cause physical harm to another.

"(B) No person shall recklessly cause serious physical harm to another.

"(C) Whoever violates this section is guilty of assault, a misdemeanor of the first degree."

The unknown person who threw the tire from the pedestrian bridge onto plaintiff's bus while driving on I-70 was guilty of violating R.C. 2903.13.

Thus, what plaintiffs really seek is a requirement that police protection be provided where criminal conduct may foreseeably cause injury with a cause of action to be vested in an injured individual where such protection is not provided.

The five-foot-eight-inch chain link fence, which was provided, was fully adequate to guard against any sizeable object falling on the highway below as a result of negligence. What plaintiffs seek is protection at great expense to the public against all sorts of flagrant criminal misconduct. We can take judicial notice of the fact that many walkways over highways are completely unguarded except for railings to protect pedestrians or motorists from objects accidentally falling onto the highway. If the public is answerable for damages to an injured party by criminal misconduct because a bridge is not designed to prevent injuries caused by criminals intentionally throwing objects on the highway, the public is arguably responsible to compensate any person injured by a criminal where an expert witness

states that inadequate police protection was provided to prevent the injury. If chain link railings are provided to enclose the entire walkway, the public may be liable because 'smaller, albeit highly dangerous objects, are thrust through the remaining holes. If criminals commence shooting at cars through small openings, it could be argued that there is an obligation to provide bulletproof shields.

The duty of the state, if any, to provide extraordinary protective devices against injury from criminal misconduct is a duty owed generally to society but not a duty owed to a particular person. Otherwise, the state of Ohio or its municipalities and subdivisions could be held responsible for damages to a person criminally assaulted on the streets because too little police protection was provided. The public duty to provide protection against criminal misconduct is not one for which a breach will result in a negligence recovery by an injured member of the public. Police protection is a duty owed to the public as a whole but not to any individual member. See *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125 [5 O.O.3d 86].

The issue in this case is police protection, not negligent design of a highway bridge. A policeman stationed on the bridge would be the best protection against injury to a motorist from an object hurled by a criminal onto the highway. Neither a criminal-proof overpass nor a policeman is required to avoid monetary liability of the state to an injured person.

Plaintiffs' second argument is that the trial court failed to recognize that governmental immunity of the state for negligence in the design and construction of highway bridges has been waived.

The Court of Claims did not base its decision on governmental immunity, although the state has argued that defense.

A review of the judgment entry of the Court of Claims discloses that the judgment was based on the merits of plaintiffs' case and not governmental immunity.

Plaintiffs' assignment of error is overruled, and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

NORRIS and LYNCH, JJ., concur.

LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.