SINGLETON ET AL., APPELLANTS, *v.* CITY OF HAMILTON, APPELLEE.

188

(No. CA85-06-071 — Decided
June 16, 1986.)

*Carl Morgenstern* and *Roger Gates,* for appellants.
*Charles A. Turner,* for appellee.

JONES, J. This is an appeal by plaintiffs-appellants, Pamela Singleton and a group of similarly situated Hamilton residents, from a decision of the Butler County Court of Common Pleas sustaining the defendant-appellee's, city of Hamilton's, motion for judgment on the pleadings.[1] Appellants filed suit claiming appellee failed to enforce a general city charter provision[2] relating to public health in connection with the storage and subsequent escape into the environment of hazardous chemicals and pollutants from the Chem-Dyne Corporation (hereinafter "Chem-Dyne") waste disposal site in Hamilton, Ohio. Appellants' complaint alleged appellee was negligent and liable to them for failing to take action against Chem-Dyne, a private corporation, based on the city's duty to promote the general health of its citizens and abate nuisances.

The trial court entered judgment for appellee finding it owed appellants no special duty regarding the activities of Chem-Dyne within the city.

Appellants' appeal assigns the following error:

"The trial court erred in granting

---

[1] Civ. R. 12(C).

[2] Appellants did not allege a violation of any specific city ordinance or state statute.

appellee's motion for judgment on the pleadings."

## I

When considering a defense motion for judgment on the pleadings, a trial court is required to assume the allegations in the complaint and all reasonable inferences to be drawn therefrom are true. *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, 165-166, 63 O.O. 2d 262, 264, 297 N.E. 2d 113, 117. A Civ. R. 12(C) motion for judgment on the pleadings presents a court with a question of law — that is, assuming that the complainant's allegations of fact and reasonable inferences to be drawn therefrom are true,[3] do they state a legal cause of action? *Peterson, supra.*

Since municipal corporations still enjoy certain forms of sovereign immunity, we will first examine the impact, if any, of prior sovereign immunity decisions on this case. Second, since appellants' action involves the obligation of a city to protect the public health and abate nuisances, we will then address this duty. Finally, since the appellants' complaint alleges negligence, we will examine this case bearing in mind that a cause of action in negligence has four elements: (1) duty, (2) breach of duty, (3) proximate causation, and (4) injury resulting from the duty's breach. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710.

## II

The Ohio Supreme Court has generally abolished sovereign immunity for municipal corporations. *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228. The abolition of municipal corporation sovereign immunity came about because the Supreme Court found it was time to "subject" "municipal entities to the same rules as private persons or corporations if a duty has been violated and a tort has been committed." *Enghauser, supra,* at 35, 6 OBR at 56, 451 N.E. 2d at 232. However, the Supreme Court's opinions have also made it clear that some forms of municipal sovereign immunity must necessarily continue to exist in order for local governments to continue to function effectively. For instance, the court pointed out that no tort action lies against a municipal corporation for

---

[3] Applying the *Peterson* decision, the question we are presented here is:

Assuming the city of Hamilton is an Ohio municipal corporation whose charter provides it shall enforce all laws and ordinances and exercise all powers relating to public health; assuming said city allowed the Chem-Dyne Corporation to operate within its boundaries and receive toxic and hazardous chemicals for storage or reclamation purposes; assuming said city knew or should have known Chem-Dyne had never received an Ohio Environmental Protection Agency or United States Environmental Protection Agency permit as required by federal law; assuming further that Chem-Dyne was accumulating, storing, and disposing of toxic and hazardous substances at its site within the city and that its methods of doing so were unsafe and could cause damage or prejudice to others; assuming as a result of Chem-Dyne's unsafe accumulation, storage, and disposal methods surface and subterranean contamination occurred at the Chem-Dyne site and in adjacent areas; assuming also said city's officials, by action or inaction, permitted Chem-Dyne to operate for five years in spite of their knowledge of Chem-Dyne's existence and function; and assuming that certain city residents suffered injury to their persons and real property as a result of Chem-Dyne's operation; do these certain city residents have a cause of action against the city of Hamilton for negligence?

acts or omissions involving the exercise of a legislative or judicial[4] function, or the exercise of an executive planning function[5] involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.[6] *Enghauser, supra,* at paragraph two of the syllabus; Cf. *Marrek* v. *Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St. 3d 194, 9 OBR 508, 459 N.E. 2d 873. Our reading of the Ohio Supreme Court's previous sovereign immunity decisions leads us to believe that they stand generally for the proposition that while no action lies to compel a municipality to exert its governmental authority in a given arena, once an express decision is made to engage a municipality in a certain function or activity, it will be held liable for its employees' and agents' negligent acts or omissions in the performance of that function or activity the same as a private corporation or any person would be. *Enghauser, supra,* at paragraph two of the syllabus; *Longfellow* v. *Newark* (1985), 18 Ohio St. 3d 144, 146, 18 OBR 203, 205, 480 N.E. 2d 432, 434.

Based on the Supreme Court's prior decisions, we further believe that absent an express statutory duty to regulate or oversee a certain public or private activity, and absent the voluntary exercise of a governmental unit's authority to regulate or oversee a certain field of activity following executive or legislative decision-making, a municipal corporation is not generally liable for nonfeasance. In other words, a governmental unit's failure to exercise its authority to enter a field of activity, public or private, in order to regulate or oversee activity is not itself actionable in the absence of a city charter, city ordinance, or statutory duty mandating that the governmental unit oversee or regulate such field. See *Cleveland, ex rel. Neelon,* v. *Locher* (1971), 25 Ohio St. 2d 49, 54 O.O. 2d 189, 266 N.E. 2d 831. Consequently, we conclude from the Supreme Court's prior decisions that should there be no legally enforceable duty or voluntary assumption of a duty on a governmental entity's part, no citizen or group of citizens may successfully initiate court action for damages because that governmental unit failed to exercise its executive or legislative discretion to enter into a field of regulation, oversight, or activity. We further conclude appellee is not required to enter into the regulation of hazardous waste sites unless it is expressly required to do so by law or it has otherwise voluntarily chosen to regulate them.

With this in mind, we turn to a municipality's duty to abate a nuisance such as a hazardous waste site. Since Hamilton is a charter government and has a municipal code, and Ohio has state statutory law on the doctrine of nuisance, we shall examine both in an attempt to determine what duty appellee had to abate the conditions we must assume it knew existed at Chem-Dyne.

### III

We begin our discussion of ap-

---

[4] An example of this surviving form of judicial immunity is found in *Wilson* v. *Neu* (1984), 12 Ohio St. 3d 102, 12 OBR 147, 465 N.E. 2d 854.

[5] An example of a city's legislative body's immunity for an approval of a subdivision plat can be found in *C & D Partnership* v. *Gahanna* (1984), 15 Ohio St. 3d 359, 15 OBR 480, 474 N.E. 2d 303.

[6] This principle stems, at lease in part, from the Supreme Court's previous recognition that it is generally without authority in the first instance to initiate or compel initiation of any governmental activity. *Wapakoneta* v. *Helpling* (1939), 135 Ohio St. 98, 13 O.O. 460, 19 N.E. 2d 772.

pellee's duty to appellants by noting appellants' complaint stresses appellee's knowledge of the existence of the potentially hazardous situation at Chem-Dyne. As we read appellants' complaint, it alleges appellee owed appellants a duty because it had knowledge of the danger Chem-Dyne posed to the surrounding area. We read the complaint to further allege that appellee's knowledge of the potential danger constituted a warning to appellee of foreseeably injurious consequences and thereby imposed a duty on appellee to take action to prevent such injury. However, in *Ruwe* v. *Bd. of Cty. Commrs. of Hamilton Cty.* (1986), 21 Ohio St. 3d 80, 83, 21 OBR 377, 379, 488 N.E. 2d 157, 159, the Ohio Supreme Court expressly disapproved of such an argument in a county immunity case, saying: "* * * The mere existence of a hazard does not result in actual or constructive notice to a governmental entity when the governmental entity's statutory or voluntarily assumed responsibilities do not include prevention or removal of the aforesaid hazard." Since knowledge of the Chem-Dyne situation alone does not impose a duty on appellee to become involved in Chem-Dyne's activity, we turn to the Codified Ordinances of the city of Hamilton and the Hamilton City Charter to determine what nuisance regulation duties appellee has voluntarily undertaken.

An examination of appellants' complaint directs our attention to Section 011.87, Article XI of the Hamilton City Charter as the predicate for imposition of a governmental duty to appellants in this case or as evidence appellee has voluntarily agreed to act in this situation. It provides in part:

"The city shall, through such officers as may be provided for by ordinance, enforce all laws and ordinances relating to health, and such officer or officers shall perform all duties and may exercise all powers relative to the public health provided by general law to be performed and exercised in municipalities by health officers. * * *"

Upon examining the above charter provision, we are not convinced by this broad statement alone that a duty has been created or voluntarily assumed by appellee to regulate or oversee hazardous waste disposal sites within the city of Hamilton. Normally, the provisions of the Ohio Constitution[7] conferring powers of local self-government are self-executing in the sense that no legislative act is necessary to make them effective and available to a municipality. *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, 140 N.E. 595, limited on other grounds, *Cleveland* v. *Pub. Util. Comm.* (1936), 130 Ohio St. 503, 200 N.E. 765. However, the charter is basically the constitution of the municipality, *Cleveland, ex rel. Neelon,* v. *Locher, supra,* and is not necessarily self-executing. *Hayslip* v. *Akron* (1984), 21 Ohio App. 3d 165, 21 OBR 176, 495 N.E. 2d 28. A self-executing city charter provision is one which includes the rules or means by which it will be enforced, *Stange* v. *Cleveland* (1916), 94 Ohio St. 377, 380, 114 N.E. 261, 262, while a charter provision which is not self-executing is one which requires some additional expression, legislative or otherwise, which makes it enforceable. *Hayslip, supra; Taylor* v. *Cleveland* (1950), 97 Ohio App. 132, 57 Ohio Law Abs. 81, 42 O.O. 348, 93 N.E. 2d 594.

Our reading of this charter provision leads us to conclude that it is not self-executing. For on its face it contemplates that further legislative and executive action will be undertaken. Moreover, it does not address any specific areas of public health. Certainly, not all public health threats were

---

[7] Section 3, Article XVIII, Ohio Constitution.

contemplated as being undertaken by virtue of this single declaratory charter provision. For example, we think it unlikely that the city of Hamilton by this provision undertook to regulate or oversee the burning of the high-sulfur coal and be liable for the damage it causes its citizens in the form of acid rain. We, therefore, cannot agree with appellants that this charter provision alone imposes a duty on the city of Hamilton to regulate or oversee the Chem-Dyne waste disposal site. However, our examination of the Codified Ordinances of the city of Hamilton reveals that further legislation has been enacted pursuant to this provision. To these sections we now turn. In reviewing this legislation we are mindful of the Ohio Supreme Court's recent decision in *Fondessy Enterprises, Inc.* v. *Oregon* (1986), 23 Ohio St. 3d 213, 23 OBR 372, 492 N.E. 2d 797, holding that municipalities retain authority to act in the area of hazardous waste facilities if they wish[8] by enacting ordinances under their local police powers. However, such ordinances may not conflict with the general laws of this state upon this subject as contained in R.C. Chapter 3734.

Part seventeen of Hamilton's city ordinances concerns public health. Within this section, Hamilton's ordinances are divided into two titles: (1) housing, and (2) general standards. Within the general standards title are ordinance chapters relating, *inter alia,* to regulation of littering, food establishments, preparation of frozen desserts, sale of meats, disposal of the dead, swimming pools, weeds, and animals. In reviewing the general standards title we find three chapters merit further attention. Chapter 1759 on offensive objects and substances does not apply to hazardous waste sites for it only addresses disposing of household liquids and industrial substances into the city's sewers or by another sanitary means. Chapter 1775 addresses miscellaneous sanitary requirements but contains no mention of the handling and disposal of industrial waste. Perhaps most closely related to this case is Chapter 1767 on nuisances.

Chapter 1767 in general terms allows city officials to investigate and abate if necessary conditions amounting to a nuisance or conditions defined by law or ordinance as a nuisance. The chapter contains four sections providing for nuisance investigation, notice to a property owner, and provisions for abatement or vacating of structures found to be nuisances. However, nowhere is the subject of hazardous or toxic wastes addressed in the nuisance chapter in any way, shape, or form. It is therefore our conclusion, based upon an examination of the Codified Ordinances of the city of Hamilton, that appellee has not enacted any public health or nuisance ordinances of anything other than a general nature. Most certainly appellee has not by its nuisance or other public health ordinances enacted a regulatory or oversight scheme addressed, generally or specifically, to hazardous or toxic waste disposal within the city.

We, therefore, do not find the appellee has expressly assumed an obligation to regulate or oversee the operation of hazardous or toxic waste

---

[8] In light of our discussion of municipal government liability and the loss of municipal immunity in Part II, *supra,* we believe it important to remember that to the extent a municipality permissibly enacts police power legislation, etc., respecting hazardous waste disposal and handling, it makes itself involved in the arena of hazardous waste disposal and subjects itself to liability if it fails to enforce its regulations or ordinances as a reasonable person would.

disposal within the city by its charter or ordinances.[9] Thus, appellee is not liable on such a theory to appellants. However, we must also address appellee's state statutory duties to appellants for potential nuisances within the city.

## IV

Although cities may not use their home rule authority to regulate hazardous waste sites in a manner which conflicts with general state law, *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44, 2 OBR 587, 442 N.E. 2d 1278, R.C. 715.44 provides municipal corporations with the power to abate nuisances. Generally, it provides a municipality may abate, regulate, or prohibit a nuisance within its boundaries. However, the statute is written in permissive language using the word "may." When the word "may" is used in a statute, it generally means that duty is optional, permissive, or discretionary, and not mandatory. *State, ex rel. Niles,* v. *Bernard* (1978), 53 Ohio St. 2d 31, 34, 7 O.O. 3d 119, 120-121, 372 N.E. 2d 339, 341. A governmental duty which is mandatory may be enforced by action for its breach, *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787, or in mandamus, *Cleveland, ex rel. Neelon, supra.* Because R.C. 715.44 uses the word "may," and in light of *Wiederhold, supra,* we find any duty it imposes on appellee is not mandatory. This being the case, we believe the determination whether the city will or will not exercise its decision-making function and consequently its sovereign powers to pursue an alleged nuisance falls within the Supreme Court's sovereign immunity grant for executive and legislative decisions involving the application of a high degree of official judgment or discretion. Cf. *Schreier* v. *St. Bernard* (C.P. 1909), 19 Ohio Dec. 476. We therefore find appellee's failure to take steps to abate a nuisance based on this statute can not be actionable.[10] Appellants have no cause of action against appellee on the basis of any statutory duty to abate nuisances or an action for failure to undertake a discretionary task.

Turning to an examination of the balance of R.C. Title 7, we find that none of its chapters imposes a duty on municipalities to regulate or oversee hazardous waste disposal sites. As to R.C. Chapter 3734, we find it is a state oversight and licensing system for hazardous waste storage, treatment,

---

[9] On this point we part company with Judge Ringland, who dissents herein. We believe the majority and minority points of view differ on the issue of whether a municipality's assumption of a duty through its ordinances by which it loses its immunity must be express, or whether it can also be implied. We believe the dissent reaches its conclusion that Hamilton has assumed a duty toward the appellants by implying such duty arises from existing non-specific ordinances which could be interpreted to cover this situation. However, we believe any assumption of a duty which consequently removes a city's sovereign immunity shield should be an express and knowing act of the city's fathers. It should not be implied from ordinances which are often written broadly and at a time when the specific problem which later develops was not foreseen. We believe that to be the case here.

[10] We note at this point that neither side to date has addressed appellants' private right to bring a nuisance action against Chem-Dyne. Rather, the thrust of this case appears to be that the city alone bears responsibility to bring a nuisance action. Ohio has long recognized the private right to bring a nuisance action. See *Rothfuss* v. *Hamilton Masonic Temple Co.* (1973), 34 Ohio St. 2d 176, 63 O.O. 2d 270, 297 N.E. 2d 105.

and disposal facilities. Based on our examination of it we conclude that responsibility for implementation of this regulatory effort lies with the state of Ohio, not appellee. We therefore conclude appellants have no action against appellee under state statutes relating to municipalities for failing to regulate or take action against Chem-Dyne. We now turn to an analysis of a negligence action by appellants against appellee separate and apart from duties imposed by ordinance or statute.

## V

We have previously stated that a cause of action for negligence against appellee for failing to close or regulate Chem-Dyne requires appellants to prove four elements: a duty, its breach, proximate causation of an injury, and actual damages. The trial court granted appellee judgment on the pleadings because it found appellee owed appellants no special duty on which to predicate a negligence action. As we must accept appellants' complaint as true, we believe the only areas of discussion which remain subject to examination are the existence of a duty owed appellants by appellee and proximate causation of appellants' alleged injuries by appellee's breach of such duty.

### A. Duty

Whether one party owes another a duty is question of law. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467. Appellants' brief clearly states the nature of the duty claimed to exist here in its statement of the facts as follows:

"The defendant, by official action or inaction of the city council and its duly appointed agents, officials and employees, negligently failed to carry out its duty to enforce the laws and ordinances of the city relating to the protection of the public health and allowed Chem-Dyne to commence operations

and continue its operations for approximately five years * * *."

To the extent this quotation asserts that appellee's negligence and liability are due to its council's failure to act, we do not find it persuasive for the reasons set forth in Part II of this opinion and in light of *Wiederhold, supra.*

Appellants further argue that the Supreme Court's decision in *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776, supports their claim that appellee owed them a duty. However, we find *Reynolds* distinguishable and inapplicable in this case. In *Reynolds* the state was held to be answerable for failing to confine a work-furloughed prison inmate during hours when he was not working. The court ruled the state had been negligent *per se* for failing to confine its prisoner when he was not at work as the work-furlough statute required, and as a consequence of which the inmate was able to commit a brutal and heinous crime for which suit was initiated. Appellants here do not cite any specific statutory violation or direct our attention to a duty arising from a city charter provision or city ordinance. This was the crucial factor in *Reynolds*.

Finally, in addressing the concept of appellee's duty to appellants, we believe the notion of "a special relationship" and the case of *Texaus Investment Corp.* v. *Haendiges* (C.A. 6, 1985), 761 F. 2d 252, merit attention. In *Texaus*, Texaus Investment Corporation filed suit against the city of Cleveland (among others) alleging the Sony building in Cleveland, which they had purchased from other defendants, was structurally unsound because, *inter alia,* city building inspectors had negligently performed their inspection and construction oversight duties. The Sixth Circuit Court of Appeals held that Texaus Investment's suit against

the city of Cleveland for its failure to enforce its building code did not state a cause of action, finding Cleveland had no special relationship with Texaus and did not owe Texaus a special duty[11] regarding the enforcement of its building code.

Our reading of *Texaus* leads us to conclude that it breaks new ground in Ohio law and is consistent with some lower Ohio court rulings.[12] To date, Ohio's law respecting sovereign immunity for municipalities has said simply that if a municipality either voluntarily chooses or is statutorily required to regulate or oversee a certain field, a municipality is liable for negligence the same as a private corporation or person would be in the same position. *Enghauser, supra.* Thus, as the law now stands, if Cleveland is required by state law to inspect building construction or if Cleveland, though not required by statute to inspect buildings, nevertheless enacts express ordinances to inspect buildings, it is liable for negligence in the performance of such inspections, just as a private person or corporation would be. The view of the Sixth Circuit in *Texaus* explores further the concepts of the duty a city owes its citizens in a manner not yet addressed by the Ohio Supreme Court. However, since *Texaus, supra,* like *Reynolds, supra,* is firmly and clearly based upon the existence of a governmental supervisory or regulatory scheme which is already in place, which is *not* the case here as we have previously pointed out, we do not find the *Texaus* decision has any impact on the results here.

With regard to the notion of the existence of "a special relationship" or private duty, we find no mention of either term in any Ohio Supreme Court sovereign immunity decision since the doctrine began its present course of decline. Lower courts in cases such as *Cain* v. *State* (1984), 14 Ohio App. 3d 105, 14 OBR 119, 470 N.E. 2d 208 (where an auto accident occurred when a driver who had passed a driver's test in Spanish collided with another auto because he could not read English traffic signs) have examined some Ohio statutes and said the duty they create is one owed to all members of the public generally and not a particular private individual. However, these cases invariably cite as authority decisions rendered before the decline of sovereign immunity began. We are, therefore, unconvinced that the public duty/private duty dichotomy relied on by the trial court and Sixth Circuit in *Texaus, supra,* is viable in light of decisions such as *Reynolds, supra.* We decline to rely on such a dichotomy here. For the same reason, we decline reliance upon the notion of "a special relationship."

### B. Proximate Cause

In closing, we cannot help but question the existence of a causal relationship between appellee's failure to act and appellants' subsequent damage. To the extent appellants' claim is merely that the presence of Chem-Dyne within their neighborhood caused their property to decline in value, we are unpersuaded of its validity, for the location of the facility itself, and not appellee's failure to regulate it, would surely have depressed property values in any case. Additionally, even if ap-

---

[11] By "special duty" the Sixth Circuit apparently meant a duty which is more than simply the general municipal duty to its citizens as a whole as gathered from the city's charter and ordinances.

[12] See *Epling* v. *Cardarelli* (1983), 13 Ohio App. 3d 142, 13 OBR 175, 468 N.E. 2d 335; *Zebrasky* v. *Dept. of Transportation* (1984), 16 Ohio App. 3d 481, 16 OBR 564, 477 N.E. 2d 218.

pellee had instituted litigation against Chem-Dyne, there is no guarantee Chem-Dyne would not have prevailed or would have not obtained the necessary Environmental Protection Agency approvals, or that the damage which has occurred would not have occurred.

It appears to us that the damage to appellants' property could just as readily have occurred whether appellee acted or not, and whether or not EPA approval occurred. We therefore cannot say the natural and foreseeable consequences of appellee's failure to take action against Chem-Dyne caused environmental damage. After all, Chem-Dyne was a private corporation acting completely independently of appellee, which had no specific laws on its books violated by Chem-Dyne.

### Conclusion

We therefore overrule appellants' sole assignment of error. We sustain the trial court's decision granting judgment to appellee on the pleadings.

*Judgment affirmed.*

KOEHLER, P.J., concurs separately.

RINGLAND, J., dissents.

RINGLAND, J., of the Court of Common Pleas of Clermont County, sitting by assignment in the Twelfth Appellate District.

KOEHLER, P.J., concurring. This court has concluded that there is no duty enjoined upon appellee, city of Hamilton, to regulate or oversee hazardous waste disposal sites within its boundaries. It is further concluded that oversight and licensing of hazardous waste storage and disposal facilities and the regulation thereof lies with the state of Ohio and not the local political subdivision by virtue of R.C. Chapter 3734.

My separate concurrence is predicated upon my belief that political subdivisions of the state are not only relieved of responsibility for such regulation, but are pre-empted by the state, may not enter into the area and have no authority beyond that derived from the state.

The Ohio Supreme Court has recently determined that a home rule municipality has concurrent authority with the state to license, supervise, inspect and regulate hazardous waste facilities within its corporate limits under its police powers so long as the exercise of such authority does not conflict with general laws of the state. *Fondessy Enterprises, Inc.* v. *Oregon* (1986), 23 Ohio St. 3d 213, 23 OBR 372, 492 N.E. 2d 797.

Environmental considerations are so significant that in my opinion concurrent authority to regulate divides the responsibility for such regulation and an exception for home rule municipalities produces a conflict with general law.

RINGLAND, J., dissenting. While the majority correctly cites the standard of review under Civ. R. 12(C), courts are reluctant to deal summarily with a case based on the pleadings alone. *Southern Ohio Bank* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* (C.A. 6, 1973), 479 F. 2d 478, 480. In reviewing and discussing the plaintiffs' claims, the court should determine before granting a Civ. R. 12(C) motion that plaintiffs could prove *no* set of facts in support of a claim which would entitle them to relief. *Bruce* v. *Riddle* (C.A. 4, 1980), 631 F. 2d 272. Is the law concerning the issues of sovereign immunity in this area so abundantly clear and the related issue of facts so lacking as to preclude any issue? I think not. It is with this thought in mind and a reluctance to deny a hearing on the factual merits that I dissent and discuss the issues below.

The time for mourning the judicial demise of aspects of sovereign immunity has passed. The Ohio Supreme Court has pronounced it archaic. *O'Brien* v. *Egelhoff* (1984), 9 Ohio St. 3d 209, 210, 9 OBR 520, 521, 459 N.E. 2d 886, 887. Further, the Ohio Supreme Court applied its abrogation of sovereign immunity retroactively in *Zagorski* v. *South Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St. 3d 10, 15 OBR 8, 471 N.E. 2d 1378. The Ohio Legislature's revival of many aspects of the sovereign immunity doctrine in R.C. 2744.02, effective November 20, 1985, appears to be prospective in nature and not controlling in this situation. Thus I will not dwell on discussing the perceived merit or harm caused by the recent Supreme Court decisions.

The majority opinion recognizes that once a decision is made by a municipality to engage in a certain function or activity that municipality will be held liable for the omissions or negligent acts of its agents and employees, citing *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, at paragraph two of the syllabus. Further, the majority concedes that, if a duty would exist which is mandatory upon the city, then its breach of that duty would be actionable, citing *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787. However, the majority has held that the Hamilton ordinances pursuant to the city charter did not create a duty to prevent danger from the activities at Chem-Dyne during its operation between 1974 and 1979.

Examination of the city ordinances reveals that the city has developed oversight schemes addressed to the problems of waste disposal, even though specific terminology as to the waste's hazardous or toxic character is not stated. Chapter 1759 of the Hamilton Code, titled "Offensive Objects and Substances," is of particular significance since it contains an ordinance dealing with the disposition of liquid waste. Admittedly, waste which is both hazardous and in liquid form was not included in the state's regulatory scheme as discussed below until defined as such in the 1979 revision of R.C. Chapter 3734. See R.C. 3734.01(J). Nevertheless, the city of Hamilton in Section 1759.05, "Disposition of Liquid Waste," has addressed this type of harmful substance: "no person shall throw or cast any household or *industrial liquid waste,* slop, swill, oil, brine, or water other than clean water, upon or into any thoroughfare, gutter, park, or parkway, sidewalks, yard, *lot or premises,* basin, pond, river, or watercourse." (Emphasis added.) Penalties for violation of this provision are also contained in Chapter 1759 under Section 1759.99. Plaintiffs in their cause of action have cited reports of the United States Environmental Protection Agency to show that Chem-Dyne's activities caused massive surface and subterranean contamination on its premises and neighboring ones. Avoidance of soil contamination can be construed as one of the purposes of the ordinance. Consequently, the facts alleged in the complaint indicate a breach of duty by the municipality in its failure to enforce its ordinances under Chapter 1759. Certainly Section 1759.05 of the Codified Ordinances of the city of Hamilton with its discussion of industrial liquid waste implements the legislative intent to create a duty upon the city. Further it must be realized that the term of art "hazardous waste" did not enter the lexicon of Ohio legislation until recently when the General Assembly in 1979 made revisions and additions to R.C. Chapter 3734, "Solid and Hazardous Wastes."

As for the majority's reliance upon the fact that Hamilton's nuisance ordinances (Chapter 1767) do not specifically address hazardous or toxic waste,

198

a reviewing standard which imposed the need for the precise identification in the municipal ordinance is an unreasonable construction. In *Cincinnati* v. *Miller* (1893), 11 Ohio Dec. Rep. 788, 790, the court cited *Harmon* v. *City of Chicago* (1884), 110 Ill. 400, 406, 51 Am. Rep. 698, 699:

" 'A dense smoke emitted from chimneys and smoke stacks, in the midst of a large and densely populated city, is a public nuisance, whether it is so declared by ordinance or not. Unless it is so in fact, the act of declaring it to be a public nuisance would not make it so. Omitting so to declare it, it is none the less a public nuisance. Certainly anything that is detrimental to certain classes of property and business in a populous city and is a personal annoyance to the public at large within the city, needs not be defined by ordinance to be known to the common mind as a public nuisance — it is so per se.' "

*Miller, supra,* identifies the type of specificity that is required for the enforcement of a nuisance ordinance: detriment to persons and property. The fact that the ordinances do not precisely mention hazardous or toxic waste is not required.

Further, the majority examined the state's statutory law on the doctrine of nuisance to determine whether the city of Hamilton had a duty to abate the conditions which the court assumed the city, per the pleadings, knew existed at Chem-Dyne. The majority only discussed R.C. 715.44 and dismissed it as non-applicable. While not specifically pled, nevertheless this court can take notice of R.C. 3734.04. See Civ. R. 44.1(A)(1) ("[j]udicial notice shall be taken of the * * * public statutory law of this state").

Prior to its amendment in 1979, R.C. 3734.04 stated:

"The board of health of each district *shall* provide for the inspec-

tion, licensing, and enforcement of sanitary standards for solid waste disposal facilities and sites in conformity with sections 3734.01 to 3734.11, inclusive, of the Revised Code." (Emphasis added.) See 132 Ohio Laws, Part I, 1258.

Even though the term, "hazardous waste," was not added to R.C. 3734.01 until 1979, the Ohio Legislature had exhibited its concern about undesirable materials of this type and their effect upon the environment with its enactment of R.C. 3734.01 *et seq.* in 1967 and its establishment of the Ohio Environmental Protection Agency in 1972. In other words, a statutory scheme regulating many of society's by-products capable of injuring the environment was in place by the time Chem-Dyne began conducting its business in the city of Hamilton. Before the 1979 revision to R.C. Chapter 3734, state law had defined "solid wastes" to mean "unwanted residual solid or semisolid material as results from industrial, commercial, agricultural, and community operations, excluding earth or material from construction, mining, or demolition operations and slag and other substances which are not harmful or inimical to public health, and includes garbage, combustible and noncombustible material, street dirt, and debris." R.C. 3734.01(E). See 132 Ohio Laws, Part I, 1257. Plaintiffs' complaint alleges that Chem-Dyne held itself out to the public as a national marketing company selling environmental disposal and reclamation services. This allegation therefore raises the inference that the company services involved materials which satisfied the code's definition of solid waste and activities subject to regulation under R.C. 3734.01 *et seq.*; at least a factual issue is raised.

Under the 1967 enactment, the board of health of each district was required to provide for the inspection,

licensing, and enforcement of sanitary standards for solid waste disposal facilities and sites in conformity with the code's sections. R.C. 3734.04. See 132 Ohio Laws, Part I, 1258. Under present law, a board of health continues to have the same duties except that hazardous waste matters are now under the direction of the Director of Environmental Protection. R.C. 3734.04.

Thus, for the twelve-year period between 1967 and 1979, Ohio law made no distinction between the nature of solid wastes as hazardous or non-hazardous, merely characterizing these substances as unwanted, residual materials. Nonetheless the state had entered the field of regulating these wastes and had imposed mandatory duties on municipal boards of health in the process. Under the state of the law during Chem-Dyne's operations, the city of Hamilton, through its board of health, had three mandatory duties — to inspect, to license, and to enforce sanitary standards for solid waste disposal facilities and sites. R.C. 3734.04. Plaintiffs allege a breach of these duties by asserting first that the city had knowledge that the facility was unlicensed, a condition which existed due to the city's inaction. Further plaintiffs allege that the city knew or should have known that Chem-Dyne was accumulating, storing and disposing of noisome substances in an unsafe manner. Such allegations reasonably indicate that the city was not enforcing the sanitary standards established by the Ohio Environmental Protection Agency.

Accordingly, I would find that plaintiffs' complaint alleges sufficient facts to show that the city of Hamilton breached mandatory duties owed to them under R.C. 3734.04.

Lastly, this court must recognize in today's modern society that cases involving environmental problems and remedies should be closely scrutinized to protect all persons involved. Environmental law and its rights and remedies are constantly changing and expanding to meet the needs of those involved. The courts should therefore be all the more circumspect in summarily denying a forum on the merits in this ever-changing and increasingly important area of the law. Therefore, at this stage of the proceedings, I would overrule the trial court's granting of defendant's Civ. R. 12(C) motion.