BERLING, ADMR. *v.* OHIO DEPART-
MENT OF REHABILITATION
AND CORRECTION.

(No. 88-04546—Decided June 7, 1989.)

Court of Claims of Ohio.

*William E. Johnson* and *Phillip
Allen,* for plaintiff.

*Anthony J. Celebrezze, Jr.,* at-
torney general, and *Jordan Finegold,*
for defendant.

LEACH, J. On April 13, 1988, plain-
tiff filed a complaint in this court, as
the administrator of the estate of
Retha Welch, alleging that the defen-
dant negligently supervised a parolee
thereby causing the death of Retha
Welch. This cause came on for trial on
May 15, 1989 on the sole issue of liabil-
ity. The parties presented evidence,
testimony and arguments as to the
facts and issues involved herein. Upon
consideration of the record the court
renders the following findings of fact
and conclusions of law.

Findings of Fact

(1) Plaintiff, Gerry H. Berling, is
the son and duly appointed adminis-
trator of the estate of Retha Welch;

(2) On or about January 20, 1987,
the defendant released William R.
Virgil from the Chillicothe Correc-
tional Institution and ordered him to
report to the Hamilton County Proba-
tion Department, pursuant to the
Adult Parole Authority's ("APA's")
statutory authority, for continued
supervision;

(3) Theresa Pomerleau, a recent
employee of the APA and a proba-
tionary parole officer at the time perti-
nent hereto, was assigned to supervise
Virgil's activities and rehabilitation
while he was on parole;

(4) Subsequent to Virgil's release
on parole, he established residence at
the Tender Mercies Group Home,
which provides, in essence, housing for
homeless and mentally ill persons in
Cincinnati, Ohio;

(5) On January 21, 1987, Virgil
met with Pomerleau, his parole officer,
to become acquainted and to discuss
the parole rules governing his period of
supervision. Virgil demonstrated a
poor attitude and was reluctant to sign
the rules form;

(6) Virgil was considered by the
APA to require maximum supervision;

(7) Ideally, a parole officer in said
district attempts to have two face-to-
face meetings with a parolee and one
home verification per month;

(8) Pomerleau and Virgil were
scheduled to meet on January 26,
1987, but Virgil cancelled the meeting
due to an alleged job interview. A
meeting was also scheduled for
January 30, 1987, but the meeting was
cancelled due to Virgil's appointment
with someone in the welfare depart-
ment. The next scheduled appointment
was February 5, 1987, but Virgil was
absent without an explanation;

(9) On February 10, 1987, Virgil
and Pomerleau met, pursuant to a let-
ter Pomerleau sent to Virgil indicating
that he must appear on said date or he

would be in violation of his parole. Virgil also appeared at his scheduled office visits on March 2 and 16, 1987;

(10) Pomerleau had contacted Tender Mercies Group Home on various occasions to verify Virgil's residence;

(11) Joseph Poole, Pomerleau's direct supervisor, discussed Virgil's case with Pomerleau on at least five occasions within an eleven-week period of time;

(12) Virgil was suspected of committing various thefts and of drug abuse, but there was lack of information to consider him in violation of his parole. On March 19, 1987, however, he was arrested by members of [the] Cincinnati Police Department due to a possible APA violation;

(13) On April 2, 1987, a hearing was held at the Hamilton County Jail concerning Virgil's arrest. No probable cause was found as a result of said hearing and Virgil was released. Immediately thereafter, Pomerleau met with Virgil to discuss new parole rules. They also met on the next day to discuss overall problems and supervision;

(14) Retha Welch worked with inmates through a church group, discussing religion as a way of bringing a change to one's life. Welch had taken Virgil to church on various occasions and they allegedly became close friends;

(15) Retha Welch was murdered on or about April 9, 1987, and Virgil was subsequently charged [with] and convicted of the offense; and

(16) There was no special relationship between the decedent and the APA.

## Conclusions of Law

Plaintiff contends that the defendant negligently supervised Virgil and negligently allowed him to remain on parole after he had violated his parole. In essence, plaintiff alleges that defendant's failure to supervise Virgil "in such manner as to insure as nearly as possible the parolee's rehabilitation while at the same time providing maximum protection to the general public," as required by R.C. 5149.04 (A), constituted negligence *per se* (violation of statute), or, in the alternative, constituted ordinary negligence.

In view of the allegations asserted, plaintiff has the burden of proof to show by a preponderance of the evidence that defendant was liable under the circumstances. It is generally accepted in Ohio that the essential elements of negligence are (1) a duty of care owing to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) an injury proximately resulting from such breach. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467; *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732. Also to be considered is the allegation of negligence *per se* due to plaintiff's claim that defendant violated a specific requirement of law, to wit: R.C. 5149.04(A). See 70 Ohio Jurisprudence 3d (1986) 123, 123-124, Negligence, Section 53.

Testimony at trial revealed that there was suspicion that Virgil was linked to acts of theft and drug use during his parole period. Plaintiff's expert witness, Dr. Michael A. Gureasko, a psychiatrist, testified that, in consideration of Virgil's past behavior and the allegations of theft and drug use, he believed Virgil should have been deemed a parole violator much earlier in his relationship with the APA. He testified that a person's past behavior is the best indication to predict future behavior; in this case, he believed that Virgil demonstrated violent behavior in the past, and, as such, violence should have been foreseeable. Dr. Gureasko was of the opinion that Virgil violated the conditions of his parole. In

this regard, he stated that if Virgil's parole had been revoked because of his conduct and behavioral problems, Retha Welch would not have met her untimely death.

Pomerleau testified that it is not uncommon for a parolee to miss the first appointment with his parole officer and thus she did not press the issue. Thereafter, Pomerleau scheduled meetings and Virgil missed a couple of them, but he alerted Pomerleau that he could not be present. Virgil did miss the scheduled February 5, 1987 meeting without contacting Pomerleau, which could have constituted a technical violation; but, since he appeared after Pomerleau wrote to him, she decided not to consider his absence a violation. Pomerleau was in contact with him either by telephone or face-to-face at the scheduled meetings.

As aforementioned, a parole officer in the district attempts to have two face-to-face meetings with a parolee and one home verification per month. It is the court's opinion, based on the evidence, that Pomerleau followed her duties as a responsible parole officer although her efforts were at times frustrated by Virgil. In reference to the allegations of theft and drug use, Pomerleau stated that there was a lack of information or evidence to substantiate the accusations and, thus, no probable cause to revoke Virgil's parole. Pomerleau discussed Virgil's case with her supervisor on at least five occasions and, though the APA believed Virgil should be sent back to prison, there was insufficient evidence to bring this desire to fruition.

The testimony and evidence has been duly considered by the court. Upon review of the record and the applicable law, the court is of the opinion that plaintiff has failed to demonstrate by the greater weight of the evidence that defendant's execution of its duties were unsuccessful in protecting the *general public*. In this regard, plaintiff did not show that defendant owed a special duty or had a special relationship with the decedent whereby its actions or omission to act would place plaintiff in a position of danger. In *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 525 N.E. 2d 468, the Supreme Court of Ohio held the following in its syllabus:

"1. Generally, a municipality may not be found liable in negligence when its employees act or refuse to act so as to conform to a municipal ordinance and/or a state statute.

"2. *When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury.*

"3. The public duty rule, and the special duty exception, comprise a doctrine which is independent of, and accordingly survived the abrogation of, sovereign immunity.

"4. In order to demonstrate a *special duty* or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an *affirmative duty* to act on behalf of the party who was injured; (2) *knowledge* on the part of the municipality's agent that *inaction could lead to harm;* (3) *some form of direct contact* between the municipality's agents and the injured party; and (4) that party's *justifiable reliance* on the municipality's affirmative undertaking." (Emphasis added.) See, also, *Delman* v. *Cleveland Heights* (1989), 41 Ohio St. 3d 1, 534 N.E. 2d 835.

The "public duty doctrine" is applicable to cases against a state entity. See *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125, 5 O.O. 3d 286, 367 N.E. 2d 51. In *Cain* v. *State* (1984), 14 Ohio App. 3d 105, 106-107, 14 OBR

119, 120-121, 470 N.E. 2d 208, 209, the court stated the following:

"We have consistently held that statutes such as those before us in this case do not create a duty owed to any specific or particular person, but rather, create duties owed only to the general public and that noncompliance with such statutes can therefore not be the basis of a tort action. *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125 [5 O.O. 3d 286]; *Spencer* v. *State* (Apr. 14, 1977), Franklin App. No. 76AP-1021, unreported; *Tamargo* v. *Cook* (Apr. 29, 1976), Franklin App. No. 75AP-449, unreported.

" By adopting R.C. 2743.02(A), the Ohio General Assembly waived the state's immunity from liability and permitted claims against the state to be determined in the Court of Claims in accordance with the same rules of law applicable to suits between private parties. In order for a private party to be liable for negligence, there must be a breach of a duty owed to that party. The same rule of law is applicable to the state of Ohio. * * * [The statutes at bar do not create] a duty owed by the state of Ohio to plaintiffs, but, rather, they create a statutory duty * * * to the public in general and not to specific persons or groups of persons. * * *" See, also, *Zebrasky* v. *Ohio Dept. of Transp.* (1984), 16 Ohio App. 3d 481, 16 OBR 564, 477 N.E. 2d 218.

In the case at bar, the only duty owed by the defendant in the supervision of a parolee is to "insure as nearly as possible the parolee's rehabilitation while at the same time providing maximum protection to the *general public.*" (Emphasis added.) R.C. 5149.04(A). The court finds that plaintiff failed to show that a "special duty or relationship" existed, as defined in *Sawicki, supra,* between the defendant and Retha Welch; that defendant's actions or inactions were not directly related to Virgil's behavior on the night of April 9, 1987; that the court is of the opinion that the defendant complied with the aforesaid statutory duty; and that, in addition, Virgil's act was not foreseeable nor proximately caused by the defendant. Accordingly, the court finds that the plaintiff has not shown by a preponderance of the evidence that defendant's efforts constituted negligence *per se* or ordinary negligence, as alleged by the plaintiff.

It should be noted the court has considered the plaintiff's argument concerning the case of *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776, paragraph two of the syllabus. The court is of the opinion that the plaintiff's analogy of *Reynolds* to the case at bar is not well-taken. *Reynolds* pertains to R.C. 2967.26 (prisoner on *furlough*) and thus the obligations placed on the state in the two cases are not totally parallel.

In view of the above findings and conclusions, the court hereby renders judgment in favor of the defendant.

*Judgment for defendant.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.