PEROTTI, Appellant,

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Appellee.**

[Cite as *Perotti v. Ohio Dept. of Rehab. & Corr.* (1989), 61 Ohio App.3d 86.]

Court of Appeals of Ohio,
Franklin County.

Nos. 88AP–560, 88AP–561 and 88AP–562.

Decided Feb. 23, 1989.

*John Perotti, pro se.*

*Anthony J. Celebrezze, Jr.,* Attorney General, *Donald J. Guittar* and *Sally Walters,* for appellee.

WHITESIDE, Judge.

Plaintiff–appellant, John Perroti, is an inmate in the Southern Ohio Correctional Facility in Lucasville. He appeals from judgments of the Ohio Court of Claims, which dismissed his action against the Department of Rehabilitation and Correction, and raises six assignments of error (which he labels as propositions of law) as follows:

"I. Was it an abuse of discretion to deny the pro se plaintiff allowance to interview witnesses.

"II. Did the trial court error [*sic* ] by not appointing counsel to represent plaintiff.

"III. Deferring to the judgment of prison officials is not a standard of law in negligence and medical malpractice actions and prejudiced the plaintiff.

"IV. Plaintiff was denied expert witness testimony making it impossible to prove medical malpractice.

"V. The judgment was against the manifest weight of the evidence.

"A. Plaintiff's exhibit 4 should have been admitted into evidence under Evid.R. 405 & 406.

"B. Defendant's exhibits Q, R, U, V, should not have been admitted per Evid.R. 402, 403, 801, 805.

"C. Evidence against the verdict.

"VI. Plaintiff should be provided a trial transcript for appeal."

Plaintiff filed three separate complaints which were consolidated prior to trial. The three complaints involved allegations of defendant's negligence, medical malpractice, and excessive use of force. Plaintiff contends that defendant was negligent in not following plaintiff's physician's orders regarding medications to be given to him. Plaintiff also filed numerous pretrial motions, the first of which was a motion for the appointment of counsel or, alternatively, to allow inmates to assist him at trial. The trial court denied both motions.

Plaintiff also filed a motion to interview two witnesses which he anticipated calling at trial. That motion was also denied by the trial court. The case proceeded to trial before a referee who issued her findings of fact and conclusions of law, which the trial court subsequently adopted. The referee summarized her recommendation to dismiss plaintiff's claims as follows:

"In summary, plaintiff's complaints involve claims of medical malpractice, medical negligence, negligent supervision and mistreatment. Plaintiff has not proved by a preponderance of the evidence defendant was negligent in treating him for pain by dispensing ineffective pain medication to him. In addition, plaintiff has not presented evidence that he sustained damages by the fact that he did not receive a TENS unit, ice packs or was not permitted to have the claimed orthopedic shoes.

"Plaintiff has not presented sufficient evidence that he was injured by defendant's refusal to allow him to use a wheelchair. Also, the evidence shows defendant made certain administrative decisions in using force against plaintiff on both March 14, 1983, and March 15, 1983. The court should defer to the institution's authority to make those decisions for the sake of security.

"Plaintiff has not established that he fell in the shower, or if he did, that the fall was due to defendant's negligence. Likewise, plaintiff has not presented any evidence of the circumstances involving his mistreatment at Columbus Correctional Facility, whereby he claims defendant was negligent in supervising inmates in the holding cells.

"* * *

"Therefore, based on the evidence presented at trial the referee finds defendant is not liable to plaintiff concerning the aforementioned claims. Consequently, the referee recommends that this court dismiss each of plaintiff's complaints."

The trial court adopted the report, and as a result plaintiff filed a notice of appeal and also filed a motion entitled "Plaintiff's Motion for Copy of the Trial Transcript to be Absorbed as Costs." It is plaintiff's position that he is indigent and therefore should be provided a free copy of the transcript. This court held in a journal entry filed August 12, 1988, that "* * * appellant has cited no law authorizing a free transcript and appellant has not proceeded in accordance with App.R. 9(C) even though he claims to be indigent." Thus, the record on appeal does not contain a copy of the trial transcript.

Defendant contends that this appeal should be dismissed for numerous reasons, including that plaintiff's brief contained no assignments of error. Although plaintiff does not specifically refer to "assignments of error," he sets forth six propositions of alleged errors of the trial court. Such defect may well constitute grounds for striking plaintiff-appellant's brief; however, we prefer to determine appeals on the merits where appropriate. Defendant also contends that this appeal should be dismissed because there is no record for review. While it is true that there is no transcript from the trial, plaintiff is also appealing issues which relate to pretrial motions and the trial court's disposition of such issues, all of which are contained in the record. Therefore, defendant's motion to dismiss is overruled.

By the first and fourth assignments of error, plaintiff contends that the trial court abused its discretion in not allowing plaintiff to interview "expert" witnesses, and for quashing the subpoena of Dr. Kendrick.

In a pretrial order journalized March 3, 1988, the referee determined that plaintiff should not be allowed to interview witnesses. This determination was based upon plaintiff's assignment to J–block (isolation) at the time for "violations of prison rules and regulations." The referee specifically held: "This court will not intervene in the institution's discretion in maintaining internal order and security." Plaintiff contends that this order denying plaintiff's request to interview witnesses was an abuse of discretion. In

*Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 244, 463 N.E.2d 1280, 1282–1283, this court defined "abuse of discretion" as follows: " * * * [it] connotes more than an error of judgment, it implies a decision without a reasonable basis, one which is clearly wrong."

As stated previously, the referee determined that the prison officials should be given wide discretion in making decisions which involve "internal order and security." This proposition is supported by *Bell v. Wolfish* (1979), 441 U.S. 520, 546–547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473, wherein the court stated:

" * * * '[C]entral to all other correction's goals is the institutional consideration of internal security within the corrections facilities themselves.' * * * " (Citations omitted.)

Furthermore, the court stated:

" * * * Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. * * * "

■ The decision to place the plaintiff in isolation falls within the category of those decisions of the institution that should be "accorded wide-ranging deference." In placing plaintiff in isolation, the prison officials made a determination that he needed discipline because of violations of prison rules and regulations. While it is true that the effect of this isolation was to deny plaintiff the opportunity to interview witnesses, the trial court found that the prison was within its discretion to place plaintiff in isolation and deny him access to *any*one. This decision of isolation the trial court felt was necessary to maintain order and discipline of the prison. We will not say now that the decision was "without a reasonable basis" or that it was "clearly wrong." Such decisions regarding prisoner isolation which affect the internal structure of the institution are within that institution's discretion. We do not find any indication that plaintiff sought a continuance. Nor has plaintiff demonstrated prejudice from lack of opportunity to interview witnesses, that is, *e.g.*, how the evidence would have been different if he had.

■ Plaintiff also contends that it was an error for the trial court to quash his subpoena for Dr. Kendrick because plaintiff could not afford the witness fees. Civ.R. 45(C) provides that witness fees for one day's attendance and mileage must be tendered to that witness upon demand. Plaintiff relies upon Evid.R. 614 to support his position that the court should have called these doctors as witnesses. However, this rule merely *allows* the court to call a particular witness; it does not mandate the court to call that witness.

Therefore, abuse of discretion is the correct standard by which to measure the trial court's decision not to call these doctors as plaintiff's witnesses.

In the pretrial order of March 3, 1988, the trial court limited both the plaintiff's and the defendant's witnesses. Drs. Kendrick and Boyle were on plaintiff's list and Dr. Charboudy was on defendant's list. While it is true that these were the only three doctors on both lists, the trial court did permit numerous other witnesses from the Southern Ohio Correctional Facility to testify in plaintiff's behalf at trial. Our limited record does not indicate that plaintiff was limited as a result of the trial court's decision to such an extent that he was unable to present his claims. The decision of the trial court not to call witnesses itself was not an abuse of discretion; it was not a decision without "reasonable basis," nor was it "clearly wrong." Accordingly, plaintiff's first and fourth assignments of error are not well-taken.

By the second assignment of error, plaintiff contends that it was an error not to appoint counsel or, alternatively, to allow fellow inmates to assist him at trial. The trial court ruled on both issues in two separate orders. In the October 16, 1987 order, the trial court held that, since " * * * this court does not find the exceptional circumstances present which would justify such appointment * * * " the motion was denied. In the March 3, 1988 pretrial order, the trial court denied plaintiff's motion to allow another inmate to assist him at trial.

■ Plaintiff contends that, due to the complexity of the issues involved in this case, and because he was indigent, he had the right to court-appointed counsel. Only under certain circumstances is it appropriate to appoint counsel to an indigent party. In *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, the court held at 26–27, 101 S.Ct. at 2159–2160, 68 L.Ed.2d at 649, " * * * that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."

■ Turning to the facts of this case, it is evident that plaintiff was not at any risk of losing his "physical liberty." Furthermore, the trial court held that plaintiff was capable of prosecuting this action himself, as is evidenced by a review of the record. Plaintiff filed the complaint, made requests for production of documents, and made numerous pretrial motions, all of which indicate that plaintiff was in control of the situation. It was not an abuse of discretion on the part of the trial court to deny plaintiff court-appointed counsel, there being no constitutional or statutory provision therefor. There is no indication that plaintiff sought legal aid from an organization supplying such service to indigents.

■ Plaintiff also contends that the trial court should have allowed fellow inmates to assist plaintiff at trial. These inmates were not attorneys, and the record is unclear as to any reason these people would be beneficial to plaintiff. Plaintiff cites, and we find, no law to support his contention that he had a right to such assistance. Clearly, use of fellow inmates as legal advisors or assistants would be improper. Plaintiff does not suggest any physical or medical infirmity requiring assistance. The trial court held that plaintiff was capable of litigating this action by himself, and we will not say that this decision was an unreasonable one. Even if he were not, he would not be entitled to assistance of fellow inmates but, instead, should seek assistance from a legal aid society. Accordingly, plaintiff's second assignment of error is not well-taken.

By the third and fifth assignments of error, plaintiff contends that the trial court used an inappropriate standard for negligence and medical malpractice, and that the judgment was against the manifest weight of the evidence. As both of these alleged errors involve the evidence adduced at trial, of which we have no transcript, they will be addressed together.

The only evidence of the trial we have in the record is the findings of fact and conclusions of law in the referee's report. This report, which was adopted by the trial court, presumably was based upon the evidence adduced at trial. The only issues, without a transcript, that we can consider are whether the findings of fact support the judgment. We cannot examine the correctness of the findings of fact themselves.

■ We turn first to the standard used by the referee to determine if defendant was negligent. There is a statutory duty to provide all inmates with medical care, and the referee correctly recognized this duty. The referee discussed at length the policy of the defendant institution regarding the distribution of habit-forming drugs, because one of plaintiff's claims was that he had been denied prescribed medication. The referee stated:

" * * * Although defendant's medication plan may contravene the prescription of a consulting physician, the board's objective in implementing the plan was to maintain security within the institution and prevent drug addiction among inmates. According to evidence presented at trial the plan is merely designed to restrict controlled drugs, but not to the extent of leaving an inmate in unmanageable pain or otherwise jeopardizing his well-being.

"The Medical Review Board made a decision pursuant to the institution's policies that, in plaintiff's case, non-controlled pain relievers were a preferred method of treatment. As stated in *Bell v. Wolfish* (1979), 441 U.S. 520 [99 S.Ct. 1861, 60 L.Ed.2d 447], courts should generally defer to the expert

judgment of prison authorities when matters of internal order and security are at issue."

Furthermore, the referee noted that plaintiff had not challenged the policy, thus making the issue one of negligence in the administration of that policy. In *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469, the court *per curiam* stated the well-recognized elements of negligence as follows: " * * * [O]ne seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." The referee specifically followed this standard, stating:

" * * * In order to establish negligence, it must be shown by a preponderance of the evidence that defendant owed plaintiff a duty, breached that duty and an injury proximately resulted from defendant's breach. * * * "

The referee found that plaintiff was given pain relievers even though they were not the ones he had been prescribed. The referee made no finding that plaintiff suffered any ill effect from defendant's failing to give plaintiff the narcotic pain relievers he wanted and had been prescribed. Rather, the referee found no negligence. The standard used by the referee to reach this determination was the one enumerated above and is the correct standard for negligence in Ohio.

Plaintiff also claims that defendant was negligent in failing to provide plaintiff with other medically needed items, one of which was a TENS unit, which was prescribed for pain. The referee in her report, however, stated that plaintiff had not presented any evidence to support his claim, thus failing to establish any breach of defendant's duty. Specifically, the referee stated:

"Plaintiff has not shown defendant's refusal to issue the TENS unit has injured him. Furthermore, defendant determined a TENS unit in plaintiff's possession would be a security risk. Deference must be given to defendant's determination and evaluation in accordance with *Bell v. Wolfish, supra.*"

As there is no transcript for our review, and we find no glaring misstatements of the law in the referee's report, we hold that the trial court applied the correct standard to determine whether the defendant was negligent.

Plaintiff's contention that the verdict is against the manifest weight of the evidence must fail as we have no transcript to review the evidence. Accordingly, plaintiff's third and fifth assignments of error are not well-taken.

By the sixth assignment of error, plaintiff contends that he should have received a free transcript of the trial. This court has already decided that issue in this case. In our August 12, 1988 entry, we held:

" * * * Appellant's motion for production of a transcript at state expense is denied, this being a civil action for damages and the court is aware of and

appellant has cited no law authorizing a free transcript and appellant has not proceeded in accordance with App.R. 9(C) even though he claims to be indigent."

Accordingly, plaintiff's sixth assignment of error is not well-taken.

For the foregoing reasons, plaintiff's assignments of error are overruled, and the judgments of the Ohio Court of Claims are affirmed.

*Judgments affirmed.*

BOWMAN and BROWN, JJ., concur.

WILLIAM F. BROWN, J., retired, of the Coshocton County Common Pleas Court, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.