[Cite as *Bugh v. Grafton Correctional Inst.*, 2009-Ohio-7031.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us


RICHARD BUGH

     Plaintiff

     v.

GRAFTON CORRECTIONAL INSTITUTION

     Defendant
     Case No. 2005-08999

Judge J. Craig Wright
Magistrate Steven A. Larson

<u>MAGISTRATE DECISION</u>


{¶ 1} On April 27, 2006, this court rendered summary judgment in favor of defendant. On December 12, 2006, the Tenth District Court of Appeals reversed the judgment of this court and remanded the case for further proceedings, stating in relevant part:

{¶ 2} "First, although the trial court properly found that it lacked jurisdiction to consider any claims of constitutional violations or violations of federal civil rights law * * * the trial court incorrectly applied [the doctrine of discretionary immunity in] *Reynolds*, supra.[1]

{¶ 3} "* * *

{¶ 4} "what is at issue is whether defendant breached a duty to plaintiff when procurement of plaintiff's special footwear was delayed. * * *

{¶ 5} "Second, the trial court erred by partially construing plaintiff's cause of action as a medical negligence claim.

---

[1] *Reynolds v. State, Div. of Parole & Community Servs.* (1984), 14 Ohio St. 3d 68.

**{¶ 6}** "* * *

**{¶ 7}** "Therefore, we hold that defendant failed to support its burden under Civ.R. 56, and the trial court erred, as a matter of law, by granting summary judgment in favor of defendant."

**{¶ 8}** *Bugh v. Grafton Correctional Inst.,* Franklin App. No. 06AP-454, 2006-Ohio-6641, ¶26-34.

**{¶ 9}** In accordance with the judgment of the court of appeals, the case was set for trial on plaintiff's claim of negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[2]

**{¶ 10}** At all times relevant to this action, plaintiff was an inmate in the custody and control of defendant at the Grafton Correctional Institution (GCI) pursuant to R.C. 5120.16. Plaintiff testified that he suffers from severe arthritis and joint deterioration in both of his feet. Plaintiff explained that in November 2001, he was examined by a surgeon at Corrections Medical Center (CMC) who determined that he was not a candidate for surgery.[3] However, the doctor sent plaintiff to an orthopedic specialist to be fitted for a pair of full-length, hard-sole boots with a "rocker bottom." From November 2001 to August 2005, plaintiff was seen at both GCI and CMC to modify his orthopedic

---

[2]On November 29, 2007, plaintiff filed a "request for appointment of counsel." On November 30, 2007, defendant filed a response. "[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Perotti v. Ohio Dept. of Rehab. & Corr.* (1989), 61 Ohio App.3d 86, 91, quoting *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 26-27. Plaintiff is not at risk of losing his physical liberty as a result of any determination that may be made by the court. Accordingly, plaintiff's motion for the appointment of counsel was DENIED at trial.

[3]The court notes that although plaintiff presented testimony and exhibits regarding events that occurred more than two years prior to the filing of his complaint on August 9, 2005, his claim is limited to events that occurred on or after August 9, 2003, pursuant to R.C. 2743.16(A), which states, in relevant part: "civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."

boots and to make necessary repairs.  Over that period of time, plaintiff complained that his boots were not rigid enough and that they deteriorated rapidly.

{¶ 11} Plaintiff asserts that the medical department at GCI was "very lax" about furnishing his prescribed boots and that at various times throughout his incarceration, new or repaired boots were ordered but that defendant's employees delayed the delivery of the boots to him.  Plaintiff also asserts that he was repeatedly sent on unnecessary "round trips" to CMC to be fitted for boots when his presence was not required.

{¶ 12} Defendant argues that plaintiff was seen by its medical staff every time there was a problem with his boots, and that it did not breach its duty of care with regard to the procurement of his medically-issued footwear.

{¶ 13} Plaintiff brings this action alleging negligence.  In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries.  *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.  Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being.  *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136.  Reasonable or ordinary care is that degree of caution and foresight which an ordinarily prudent person would employ in similar circumstances.  *Smith v. United Properties Inc.* (1965), 2 Ohio St.2d 310.

{¶ 14} On August 14, 2003, plaintiff was examined by a podiatrist at CMC who ordered one pair of "rigid rocker bottom soled boots."  On October 9, 2003, a "pick-up" consult was written, wherein it was noted that plaintiff's boots had arrived and that plaintiff was to try them on and return them to the CMC orthotic clinic for rocker sole modification.  On October 30, 2003, a request was made to apply a 3/4 inch rocker bottom sole.  Plaintiff asserts that GCI received the boots on October 9 but that the

boots were not sent for modifications until October 30. Plaintiff asserts that the delay from October 9 to October 30 caused him "time and pain."

{¶ 15} On November 6, 2003, plaintiff's boots were returned to GCI with rocker bottom soles and repaired rubber heels. On December 4, 2003, plaintiff was seen at CMC either for readjustment or to recast his feet for inserts. The notes from that visit reflect that plaintiff had not received his new boots. On December 22, 2003, the Health Care Administrator (HCA) at GCI noted that she received one pair of new molded insoles and that she issued those to plaintiff along with his new boots.

{¶ 16} On March 4, 2004, plaintiff complained that he could not tolerate his new orthotics because the "depression" was too deep, and that the soles of his boots were wearing out again. A doctor placed felted foam over the orthotics and advised plaintiff to send a kite in one month if the orthotic with padding was not effective.

{¶ 17} On May 27, 2004, plaintiff complained that the rocker soles were wearing out again and that the orthotics were causing him pain. A new hard bottom rocker sole was ordered to be reapplied and his orthotics were to be reevaluated. It was also noted that the quartermaster was to issue plaintiff another pair of boots until repairs were made to his original pair. On July 1, 2004, plaintiff was seen in the orthotics clinic at CMC and his boots and orthotics were taken for repairs. On July 8, 2004, plaintiff complained of pain in his great toe joints for which Motrin was prescribed. On July 15, 2004, plaintiff's boots were returned with new heels and rocker soles. On July 20, 2004, the boots were issued to plaintiff.

{¶ 18} On October 28, 2004, plaintiff complained that the soles were detaching from his boots again. On November 18, 2004, a new pair of boots was authorized for plaintiff.

{¶ 19} On November 24, 2004, plaintiff sent a kite to the podiatrist inquiring about his boots. The kite was returned to him with a notation advising him to contact the HCA.

On December 2, 2004, he sent a kite to the HCA, and on December 4, 2004, she advised him that he would be receiving new boots.

{¶ 20} On January 6, 2005, plaintiff was seen in the orthotics clinic at CMC. On January 23, 2005, plaintiff sent a kite to the HCA inquiring about his boots. On January 27, 2005, the HCA notified plaintiff that his boots had been ordered. However, plaintiff points to a consultation request from January 6, 2005 where a new pair of boots was ordered on that date, but the purchase order was not sent until January 27, 2005, the same date that his kite was answered. Plaintiff asserts that defendant's failure to promptly act upon the consultation request is another example of the delay he encountered with his boots.

{¶ 21} On May 18, 2005, plaintiff complained that his new boots did not fit. He was advised that he would be sent on a round trip to CMC with his boots.

{¶ 22} On June 1, 2005, plaintiff signed a "refusal to attend a medical appointment" form. Plaintiff wrote, "I've been down repeated times, but the HCA here ordered the wrong boots, and I don't feel I should go through more pain for no reason." Plaintiff asserts that when he was sent on round trips to CMC, he was not fitted for boots; rather, he would briefly talk to the orthotics specialist and that the boots would be sent to him at GCI for a fitting at a later time. Plaintiff also testified that the round trips were very painful for him because he remained shackled for long periods of time which resulted in pain from arthritis in his hips and feet.

{¶ 23} On August 8, 2005, a physician inquired about plaintiff's boots on his behalf and it was noted that because plaintiff had signed a refusal to attend his medical appointment on June 1, 2005, no action was taken. On August 9, 2005, plaintiff filed his complaint.

{¶ 24} Plaintiff testified that at some point near the end of 2005, HCA Michelle Viets got involved in his care. By the end of 2005, with the help of Viets, plaintiff finally obtained two pair of boots with rigid carbon fiber plates that fit him correctly.

{¶ 25} On cross-examination, plaintiff admitted that he had been told over the past several years that he was required to go to CMC or Capital Prosthetics in Columbus, Ohio on round trips to receive his orthopedic boots.

{¶ 26} Michelle Viets, R.N., testified that she became HCA at GCI in February 2004. Viets testified that when special items, such as orthopedic boots, are ordered for inmates, the podiatrist is required to inspect them and make sure that they are appropriate before the nursing staff can issue them to the inmate. Viets also stated that the podiatrist typically visits GCI one day per month. She also explained that GCI uses vendors outside of the institution to manufacture orthopedic boots.

{¶ 27} Viets explained that under normal circumstances, an inmate who requires a pair of orthotic shoes is issued a new pair every two years. However, plaintiff's boots were wearing out more frequently. In addition, Viets stated that inmates are issued only one pair of orthotic shoes. However, because plaintiff had encountered so many problems with his boots either wearing out or not fitting correctly, she contacted the institutional inspector to get approval for plaintiff to be issued two pair of orthopedic boots. Viets also testified that at the time plaintiff signed his refusal to attend a medical appointment, there was no procedure in place to follow-up with the inmate. She added that plaintiff took maintenance pain medication for preexisting issues throughout his incarceration.

{¶ 28} Based upon the evidence presented, the court finds that plaintiff has failed to prove, by a preponderance of the evidence, that defendant breached its duty of reasonable care. The court notes that plaintiff encountered much difficulty in obtaining a pair of orthopedic boots that both fit him correctly and were durable. However, the court finds that defendant's staff exercised reasonable care when it responded to plaintiff's complaints about his boots. The court further finds that Viets' testimony that defendant's staff was required to obtain the podiatrist's approval before plaintiff's boots could be issued to him was credible. The court further finds that since the podiatrist

was at GCI infrequently, a certain amount of delay in obtaining his approval was reasonable. In addition, the court finds that plaintiff's refusal to go to CMC on June 1, 2005, added to the delay that he encountered in acquiring his orthopedic boots.

**{¶ 29}** For the foregoing reasons, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment is recommended in favor of defendant.

**{¶ 30}** In light of this decision, plaintiff's December 17, 2007 motion for leave to clarify Plaintiff's Exhibit 26 is DENIED as moot.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(I). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

 

_____
STEVEN A. LARSON
Magistrate

cc:

Amy S. Brown                          Richard Bugh, #216-362
Brian M. Kneafsey Jr.                 2500 S. Avon Belden Road
Assistant Attorneys General           Grafton, Ohio 44044
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Magistrate Steven A. Larson

HTS/cmd
Filed November 25, 2009
To S.C. reporter December 29, 2009