REYNOLDS ET AL., APPELLANTS, *v.* THE STATE OF OHIO, DIVISION OF
PAROLE AND COMMUNITY SERVICES, APPELLEE.

[Cite as Reynolds *v.* State (1984), 14 Ohio St. 3d 68.]

(No. 83-1955—Decided December 12, 1984.)

*Mr. John E. Rockel,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark T. D'Alessandro,* for appellee.

CLIFFORD F. BROWN, J. The reasons for incarcerating a convicted felon are multiple, such as rehabilitation and punishment. It is unquestioned that one of the reasons felons are incarcerated is for the protection of society. R.C. 2967.26 is a statute designed to give greater flexibility to Ohio's prison system in the attempt to help rehabilitate prisoners. The statute does not, however, ignore the other reasons prisoners are set apart from society. This is self-evident from the language of R.C. 2967.26(B), which requires the state to confine a furloughed prisoner during any non-working periods. A breach of this duty by the state officials responsible for the supervision of furloughed prisoners is negligence *per se.*[1] The Court of Claims dismissed the plaintiffs' complaint, finding that R.C. 2743.02[2] does not create a cause of action against the state in this area, and further that because there was no penalty provision contained in R.C. 2967.26, the state cannot be held accountable to private individuals for the negligent supervision of a furloughed prisoner. The Court of Appeals for Franklin County affirmed this dismissal for the reason that the state breached no duty owed to plaintiffs.

R.C. 2743.02 was enacted by the Ohio General Assembly in 1975 as part of the Court of Claims Act. It limited the immunity of the state of

---

[1] The violation of a statute does not necessarily constitute negligence *per se.* The statute violated must contain a specific requirement to do or to omit to do a defined act. The statute need not, however, contain a specific civil penalty provision before its violation can constitute negligence *per se.* See *Heidle* v. *Baldwin* (1928), 118 Ohio St. 375, and *Swoboda* v. *Brown* (1935), 129 Ohio St. 512 [2 O.O. 516], at paragraph four of the syllabus.

[2] R.C. 2743.02 states in pertinent part:

"(A)(1) The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *."

Ohio. With the passage of the Act, individuals can sue the state and have liability determined with the same rules of law applicable to suits between private parties. The courts below have interpreted this abrogation of immunity to be different from the recent abrogation of municipal sovereign immunity found in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, and *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31.

We disagree. The abrogation of the sovereign immunity of the state, which was accomplished by the passage of R.C. 2743.02, is not significantly different from the common-law abrogation of municipal sovereign immunity accomplished by this court.[3] The language in R.C. 2743.02 that "the state" shall "have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *" means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.

Under the above standard plaintiffs may not maintain an action against the state for its decision to furlough a prisoner. However, once such a decision has been made pursuant to R.C. 2967.26, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours in accordance with R.C. 2967.26(B).[4] Such a failure to confine is negligence *per se*,[5] and is ac-

---

[3] *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, at paragraph two of the syllabus, states in pertinent part:

"* * * no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities."

[4] See *Shroades* v. *Rental Homes, Inc.* (1981), 68 Ohio St. 2d 20 [22 O.O.3d 152], where this court found that a violation of R.C. 5321.04, which imposes duties on a landlord to make repairs and do whatever is necessary to keep premises in a fit and habitable condition, constitutes negligence *per se* and is actionable even though such statute does not provide for tort recovery. Such reasoning is analogous to the present case.

[5] See Prosser, Law of Torts (4 Ed. 1971) 200-201, Section 36, which reads in pertinent part:

"Once the statute is determined to be applicable — which is to say, once it is interpreted as designed to protect the class of persons in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation — the great majority

tionable pursuant to R.C. 2743.02.[6] Dismissal of plaintiffs' action on a Civ. R. 12(B)(6) motion was reversible error.

Therefore, the judgment of the court of appeals is reversed and the cause remanded to the Court of Claims for further proceedings in accordance with the opinion of this court.

*Judgment reversed and*
*cause remanded.*

CELEBREZZE, C.J., SWEENEY and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in judgment only.

W. BROWN and HOLMES, JJ., dissent.

HOLMES, J., dissenting. I sincerely have a great deal of sympathy in support of attempting to find a more adequate mode of recovery for the appellants than is currently provided by Ohio statutory law. However, in that the Ohio General Assembly has specifically spoken as to the state's waiver of liability in tort, courts should show due deference to such enactments.

By way of the Court of Claims Act, the General Assembly waived the state's sovereign immunity on a limited basis. R.C. 2743.01(A) and (B); 2743.02. Local governmental agencies, such as municipalities, counties, school districts, etc., were excluded from the state's statutory waiver of immunity. In a series of cases, *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, and *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, this court judicially abrogated the common-law immunity of local governmental entities. In those instances this court was confronted with entities where sovereign immunity had not been abrogated by statute, as had the state's immunity by way of the Court of Claims Act. This difference was recognized by language in *Haverlack,* wherein the majority concluded that "in the absence of a statute," the immunity defense was not available to a municipality in an action for alleged negligence in the operation of a sewage treatment plant.

---

of the courts hold that an unexcused violation is conclusive on the issue of negligence, and that the court must so direct the jury. The standard of conduct is taken over by the court from that fixed by the legislature, and 'jurors have no dispensing power by which to relax it,' except in so far as the court may recognize the possibility of a valid excuse for disobedience of the law. This usually is expressed by saying that the unexcused violation is negligence 'per se,' or in itself. The effect of such a rule is to stamp the defendant's conduct as negligence, with all the effects of common law negligence, but with no greater effect. There will still remain open such questions as the causal connection between the violation and the harm to the plaintiff * * *."

[6] See *Claypool* v. *Mohawk Motor Inc.* (1951), 155 Ohio St. 8 [44 O.O. 27].

With the enactment of the Court of Claims Act, the General Assembly provided the manner and extent to which the state of Ohio may be sued. This action by the legislative body of this state, which was noted with approval by this court in *Boggs* v. *State* (1983), 8 Ohio St. 3d 15, should be adhered to in this matter, in that the Act reflects a policy decision by that branch of government so empowered by Section 16, Article I of the Ohio Constitution.

R.C. 2743.02(A), within the Court of Claims Act, waived the state's immunity in a limited manner. This statutory provision did not create any new claims for relief against the state.

By virtue of being the statutory appellate court from the Court of Claims, the Tenth District Court of Appeals has had the opportunity to consider a number of cases involving the general issue presented herein. That court has on numerous occasions interpreted the limited waiver of state immunity as found in R.C. 2743.02(A). In *Smith* v. *Wait* (1975), 46 Ohio App. 2d 281 [75 O.O.2d 560], Judge Whiteside stated, at 283, that R.C. 2743.02(A) "* * * merely permits actions against the state to be brought which were previously barred by the doctrine of sovereign immunity, but such actions must be predicated upon previously recognized claims for relief, for which the state would have been liable except for sovereign immunity."

Furthermore, in *Spencer* v. *State* (April 14, 1977), Franklin App. No. 76AP-1021, unreported, Judge Whiteside concurred by stating, at page 3, that R.C. 2743.02(A) "* * * merely consents to the state's being sued for claims which otherwise would be barred by the doctrine of sovereign immunity. Essentially, such claims consist of common law claims for relief for breaches of common law duties.

"Plaintiff does not rely upon a common law duty or claim for relief but, rather, contends that liability is created by failure of state employees to perform statutory duties. A statute imposing duties upon the officers and employees of the state does not create a claim for relief in third persons against the state for breach of such duties by such state officers or employees unless the statute specifically provides therefor. Such statutes create no duty of the state to any particular person but, rather, create duties only to the public generally. In order for a claim against the state to be created by statute, the statute must specifically so provide." See, also, *Harris* v. *Pub. Util. Comm.* (July 26, 1977), Franklin App. No. 77AP-256, unreported.

Accordingly, appellants would state a claim upon which relief could be granted against the state only if the claim would constitute a cause of action under the same rules of law which are applicable if the suit were between private parties. As noted by Judge Norris in the case *sub judice:* "* * * Under the circumstances of this case, the rule of law applicable to private parties, which is critical to plaintiffs' stating a cause of action, is the rule that, in order for the defendant state to be liable to plaintiffs in negligence, it must have breached a duty owed to plaintiffs."

The court then proceeded to note that at common law there was no duty of the state that would flow to these plaintiffs arising out of furlough practices. And, further, if any duty was to be found in favor of plaintiffs, it must be found within R.C. 2967.26(A) and (B). In reviewing the statute and its purpose, the court of appeals correctly determined that the statutory scheme had not been designed by the General Assembly for the purpose of affording protection to plaintiffs or the general public but, instead, was designed for its stated purpose of rehabilitating prisoners through a partial release program. The statute does not impose upon the state a duty owed to the plaintiffs and they cannot, therefore, under the allegations of their complaint prove any set of facts entitling them to recover.

In addition, a further consideration in the interpretation of the instant statute is that the action brought is not one which could have been brought between private parties inasmuch as such parties do not have the right, duty, or program to incarcerate, parole, or partially release criminals and juvenile offenders as does the state. In this regard, it must be remembered that the Court of Claims Act did not create new causes of action where none previously existed. *Hahn* v. *Brown* (Sept. 14, 1976), Franklin App. No. 76AP-389, unreported.

The liability which plaintiffs seek to impose upon the state is due to governmental action, and not actions committed by private parties who have no ability or duty to incarcerate or parole criminals. The majority, in its headlong dash to find liability against the state, illogically strains the interpretation of R.C. 2743.02 by differentiating between the discretionary decision-making process of granting parole, and the ministerial operation of keeping the parolee confined when not engaged in work or educational programs. There is absolutely no authority to support the majority opinion in this regard. The Court of Claims Act includes no such distinction nor does the case law from other states. The only case law reported in support of such philosophy deals with cases brought under the Federal Tort Claims Act which sets forth a specific discretionary/ministerial test. See *Payton* v. *United States* (C.A. 5, 1982), 679 F. 2d 475.

The statute under consideration here places the duty upon the Adult Parole Authority to make the original determination whether to place a prisoner on furlough based upon the finding that such prisoner is trustworthy. Once that determination is made, there is no statutory duty to make a continuing analysis of the trustworthiness of the person furloughed which would give rise to a duty to protect individual citizens.

The General Assembly's determination to abolish the state's immunity "in accordance with the same rules of law applicable to suits between private parties" (R.C. 2743.02[B]) takes into account the myriad of statutory functions imposed upon state agencies for the benefit of the public at large. The performance of these functions will be materially threatened by the majority's position herein. The response of our state governmental agencies to such an expansive theory of liability could well

be to reduce or eliminate the duties that they are willing to undertake which, in turn, could well jeopardize the health and safety of the general public. More importantly as it relates to the issues involved in the instant case, today's decision that the state can be held liable in a furlough situation may well result in inmates remaining incarcerated for the full terms of their original sentences, the complete antithesis of what the General Assembly intended when it enacted R.C. 2967.26.

I would affirm the judgment of the court of appeals.

W. BROWN, J., concurs in the foregoing dissenting opinion.