METZGER ET AL., APPELLANTS, *v.* SUPERINTENDENT OF BUILDING AND LOAN ASSOCIATIONS, APPELLEE.

LESTER ET AL., APPELLANTS, *v.* SUPERINTENDENT OF BUILDING AND LOAN ASSOCIATIONS, APPELLEE.

(Nos. 86AP-702 and -703—Decided December 23, 1986.)

*Michael T. Gunner,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Karl W. Schedler,* for appellee.

TYACK, J. On January 25, 1986, Raymond and Edna Metzger filed a complaint in the Court of Claims of Ohio naming the Superintendent of Building and Loan Associations of the Ohio Department of Commerce ("superintendent") as defendant. The complaint alleged that the Metzgers had taken out a variable rate loan secured by a mortgage with Citizens Building Loan and Savings Association ("Citizens"), a state-chartered institution. The complaint further indicated Citizens had violated federal truth-in-lending requirements and "had otherwise engaged in practices in violation of law." Specifically, the Metzgers claimed that Citizens had raised the rate on their loan without a required notice. The complaint stated that the superintendent had failed to regulate Citizens properly, thereby negligently causing damage to the Metzgers.

On January 17, 1986, Floyd and

Alice Lester filed a nearly identical complaint, alleging negligence on the part of the superintendent as to their loan and mortgage with Citizens. The state of Ohio filed a motion to dismiss each action, alleging that the respective complaints failed to state a claim upon which relief could be granted. The motions were sustained. The Metzgers and the Lesters appealed, each assigning the same two errors:

"1. The trial court erred in finding that there was no liability for the state of Ohio on a theory of negligence in the instant case since appellants' claims related to a private claim rather than a public duty and claim.

"2. The trial court erred in finding there was no common law liability upon the state on the facts pled by appellants."

For purposes of this appeal, the factual allegations of the complaint are deemed true. Assuming, then, that the superintendent did not properly regulate Citizens and that as a result Citizens was able to breach federal and state law in raising the rates on its variable rate mortgages, still no claim for relief will lie against the superintendent for his negligence.

This court has repeatedly held that the breach of a general statutory duty to the public by a governmental entity does not give rise to a private claim for relief. Thus, in *Jones* v. *Division of Securities* (Dec. 1, 1977), Franklin App. No. 77AP-688, unreported, this court held that the shareholders of a corporation could not recover on a complaint alleging that the state failed in its statutory duty to supervise the corporation properly, causing extensive financial damage to the plaintiffs.

In *Shelton* v. *Bureau for the Prevention of Industrial Accidents & Diseases* (Apr. 20, 1976), Franklin App. No. 75AP-464, unreported, the court had earlier held at 8:

"* * * Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty to any particular person' nor can the performance or nonperformance be the basis of a tort action by an injured person."

In *Tamargo* v. *Cook* (Apr. 29, 1976), Franklin App. No. 75AP-449, unreported, the court held that breach of a statutory duty to conduct a physical inspection of an out-of-state motor vehicle prior to issuing an Ohio certificate of title did not give rise to a claim for relief by an individual purchaser who was damaged as a result.

As indicated, these cases and many others like them have held that breach of a duty imposed by statute for the benefit of the public at large does not give rise to a claim for relief by an individual citizen harmed as a result of the breach. While claims against defendants in the private sector for such violations are widely recognized, such as in the products liability field, this court is unwilling to extend the theories to the general statutory duties of governmental entities and employees. Therefore, the first assignment of error is overruled.

The second assignment of error submits that a separate common-law liability rests upon the state under the facts alleged here. In this assignment of error appellants rely on the recently decided case of *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776. The syllabus for *Reynolds* reads:

"1. The language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exer-

cise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.

"2. Once a decision has been made to furlough a prisoner pursuant to R.C. 2967.26, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours in accordance with R.C. 2967.26(B). Such a failure to confine is negligence *per se,* and is actionable pursuant to R.C. 2743.02."

The scope of the *Reynolds* decision is not clear. Whether or not the result was partly the result of a desire of the Supreme Court of Ohio to allow recovery for a woman who was brutally raped and left unconscious with her head in a gas oven, resulting in her total paralysis and constant need for medical care, is open to speculation. But accepting the words of the syllabus at face value, no recovery occurs here. The supervision of state-chartered savings and loans is clearly an executive function characterized by a high degree of official judgment and discretion. The powers of the superintendent were such that he or she could not intervene in an individual loan agreement. Instead, a cease and desist order or other general remedy for practice by a state-chartered savings and loan would have to be contemplated. The remedies possible, by their nature, would have required a high degree of discretion and a view to the overall impact of any remedy. Thus, the supervisory activity here is the very kind of function expressly excluded from liability under *Reynolds.*

The second assignment of error is overruled.

Based on the foregoing, the judgment of the trial court is affirmed as to each case.

*Judgments affirmed.*

WHITESIDE and REILLY, JJ., concur.