**CSX TRANSPORTATION, INC., Appellant,**

v.

**PUBLIC UTILITIES COMMISSION OF OHIO et al., Appellees.**

[Cite as *CSX Transp., Inc. v. Pub. Util. Comm.* (1989), 64 Ohio App.3d 10.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–13.

Decided Aug. 29, 1989.

*Roetzel & Andress, K.R. Aughenbaugh, Michael Romanello* and *Deborah A. Mahusky,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, *William J. McDonald* and *William M. Mattes,* for appellees.

*Per Curiam.*

Plaintiff, CSX Transportation, Inc., appeals from a judgment rendered by the Ohio Court of Claims in favor of defendants, Public Utilities Commission

of Ohio and the Ohio Department of Transportation. Plaintiff's complaint sought contribution from defendants pursuant to R.C. 2307.31 and 2307.32.

Plaintiff is a rail common carrier authorized to do business in the state of Ohio where it owns, maintains and uses railroad tracks on private rights-of-way, one such track intersecting State Route 162 in Medina County. Defendant Public Utilities Commission of Ohio ("PUCO") issued an order on November 1, 1978 finding that crossing to be hazardous and in need of additional lights. The order directed plaintiff to place lights and gates at the crossing, with the cost of placement to be apportioned between plaintiff and the county of Medina.

Subsequently, in July 1979, Medina County informed PUCO that it did not have funding available to cover its apportioned share of the cost for installing the lights and gates. When the funding situation failed to improve, PUCO, in May 1984, revoked its 1978 order and dismissed the case against plaintiff.

One year later, on June 18, 1985, Dennis Ploskonka was fatally injured at the crossing in a train-car accident involving plaintiff's train. His estate filed suit against plaintiff in April 1986, which suit was ultimately settled in December 1987 for the amount of $625,000. A full and complete release of liability was obtained by plaintiff in exchange for the payment of that amount.

Plaintiff then initiated the instant cause in the Court of Claims on January 19, 1988 alleging that defendants, PUCO and the Ohio Department of Transportation ("ODOT"), negligently discharged their duty to "investigate, evaluate, designate, oversee, inspect and approve placement of grade crossing protection signs and devices" at the intersection of plaintiff's railroad and State Route 162, despite knowledge of hazardous conditions at the crossing. Plaintiff further alleged that it was entitled to contribution from defendants pursuant to R.C. 2307.31 and 2307.32 as a result of the June 18, 1985 accident at the intersection.

Defendants filed a motion to dismiss plaintiff's complaint for contribution on February 23, 1988, which motion was denied by the Court of Claims. Subsequent to their answer, defendants filed a motion for judgment on the pleadings, contending that the relevant Revised Code sections imposed only duties owed to the public at large and, thus, precluded the imposition of liability upon defendants; that defendants' statutory duties were not actionable in any event because they required the exercise of a high level of discretion; and that even assuming defendants' complaint stated an actionable cause, plaintiff could nevertheless prove no set of facts which would entitle it to relief since the evidence upon which its complaint relied was inadmissible as a matter of law. Following plaintiff's brief in opposition to the Civ.R. 12(C)

motion, the claims court granted judgment on the pleadings in favor of defendants.

Plaintiff now appeals and sets forth the following single assignment of error:

"The trial court erred in granting appellees' motion for judgment on the pleadings pursuant to Ohio Civil Rule 12(C) where appellant-CSX's pleadings did set forth an actionable claim against appellees."

■ Initially, it should be noted that the parties relied upon matters outside the pleadings to support their respective arguments regarding defendants' Civ.R. 12(C) motion. Although the trial court's entry of dismissal does not specifically reference these materials, it is apparent that the judgment was not premised solely upon the pleadings. As such, the parties in effect converted the Civ.R. 12(C) motion to a motion for summary judgment. Since plaintiff and defendants had a full opportunity to present evidentiary material, this court will review the dismissal pursuant to the Civ.R. 56(C) standard. Cf. *Fraternal Order of Police v. D'Amico* (1982), 4 Ohio App.3d 15, 4 OBR 36, 446 N.E.2d 198, and *Popson v. Henn* (1984), 17 Ohio App.3d 1, 17 OBR 47, 477 N.E.2d 465.

Plaintiff argues initially that R.C. 4907.47 requires PUCO to apportion the cost of installing a railroad crossing control device between the railroad and the public once PUCO has determined that the crossing is hazardous. As support for this argument, plaintiff relies on evidence in the file which indicates that PUCO issued an order on November 1, 1978, finding that the subject crossing was hazardous and in need of additional lights and gates, and directing the placement of the required lights and gates by plaintiff, with the cost of placement to be apportioned between plaintiff and Medina County. Subsequently, PUCO rescinded this order, in May 1984, for the reason that Medina County was unable to fund its apportioned share of the project, and that state funding was unavailable because the hazard rating for the crossing was too low. It is plaintiff's position that PUCO incurred liability for the 1985 car-train collision when it failed to effect its 1978 order apportioning between plaintiff and the public the cost of installing the grade crossing device. Plaintiff reasons that because PUCO had already made the discretionary policy determination in 1978 that the crossing was hazardous and warranted the addition of safety devices, its subsequent failure to effect that decision gives rise to liability in negligence.

With respect to its claims against ODOT, plaintiff argues that R.C. 5523.31 directs ODOT to continuously survey railroad grade crossings, which duty ODOT failed to discharge with respect to the subject crossing. Since PUCO rescinded its 1978 order for the reason that the hazard rating provided by

ODOT was too low, plaintiff contends that the record contains evidence which could support a finding that ODOT failed to competently discharge its duty to continuously survey railroad grade crossings pursuant to R.C. 5523.31.

Defendants respond to plaintiff's assignment of error by asserting first that PUCO had neither the duty nor the power, under the facts of this case, to order ODOT to pay the public's share of the cost for the erection of additional protective devices. Defendants maintain that R.C. 4907.47 vests PUCO only with the power to *apportion* the cost of erecting such devices. Defendants next contend that the decision of ODOT to classify the railroad crossing as a "high priority" crossing, pursuant to R.C. 5523.31, constitutes the exercise of an executive or planning function involving a basic policy decision characterized by the exercise of a high degree of discretion, and such a decision cannot, therefore, be the predicate for liability.

Generally, a motion for summary judgment will be granted only if, after construing the evidence most favorably to the nonmoving party, reasonable minds can only conclude that the movant is entitled to judgment as a matter of law. Civ.R. 56(C). A claim sounding in negligence must allege the existence of a duty, breach of that duty, and damage or injury as a proximate result of the breach. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469, and *Baier v. Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391, 8 O.O. 208, 209, 8 N.E.2d 1, 2–3. In the context of the liability imposed by R.C. 2743.02 upon the state for the negligent performance of its duties, no liability will attach when the state engages in the exercise of an executive or planning function which involves the making of basic policy decisions characterized by the exercise of a high degree of official judgment or discretion. *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. However, the implementation of a decision, once made, is a ministerial function for which the state may be held liable. *Id.* at 70, 14 OBR at 507–508, 471 N.E.2d at 778. See, also, *Burns v. Ohio Dept. of Transp.* (1987), 39 Ohio App.3d 126, 128, 529 N.E.2d 1283, 1285.

Here, plaintiff concedes that PUCO may not be held liable for its initial policy determination pursuant to R.C. 4907.47 that additional signals or gates were required at the subject crossing. Plaintiff contends, however, that once PUCO made this initial discretionary determination, it was under a mandatory duty to apportion the public cost to the appropriate governmental entity, which mandatory duty PUCO wholly failed to perform. It is plaintiff's position that the subsequent withdrawal of the initial order was a direct violation of the statutory duty imposed by R.C. 4907.47 upon PUCO to apportion the cost of improvements at the subject crossing. It is not.

If the initial decision made by PUCO pursuant to R.C. 4907.47 is immune from the statutory liability imposed by R.C. 2743.02, a subsequent decision to revoke an order made pursuant to that initial policy determination is likewise free from liability. The same factors which PUCO considered in making the initial determination to order the installation of crossing safety devices are identical to the factors which resulted in the subsequent decision to repeal such order. Thus, the May 1984 order cannot be the basis for finding PUCO negligent since that decision involved the exercise of PUCO's official discretion.

■ Plaintiff also argues that PUCO was negligent in failing to timely implement its 1978 order. Even if such delay could constitute negligence, any nonfeasance on the part of PUCO cannot give rise to liability under the facts of this case. Since the June 1985 accident, which forms the basis for plaintiff's action, did not occur until one year after PUCO rescinded its initial order, any negligence attributable to PUCO in failing to implement its original decision could not have caused the accident. The 1984 rescission order terminated any duty PUCO may have owed plaintiff to implement its 1978 order. As such, plaintiff's complaint as to defendant PUCO alleges only that the 1984 dismissal entry was the cause of decedent's death. Since no liability could attach to that decision, the trial court properly rendered judgment in favor of PUCO.

Plaintiff next argues that defendant ODOT breached its statutory duty set forth in R.C. 5523.31, which requires ODOT to continuously survey all railroad crossings and to prepare a priority list giving highest priority to those crossings which ODOT determines have the highest probability for accidents. Since ODOT failed to continuously conduct such survey, plaintiff argues liability may be imposed upon ODOT for any injuries resulting from such failure. Plaintiff finds support for this argument by virtue of the language in R.C. 5523.31 which renders inadmissible in " * * * any action to recover damages for negligence arising out of the use of such grade crossings * * * " the priority list generated by ODOT in performing its functions. Plaintiff argues such language indicates a legislative intent to allow actions against ODOT for malfeasance of its duty pursuant to R.C. 5523.31. For the reasons which follow, plaintiff's argument is rejected with respect to the liability of ODOT.

■ First, plaintiff misconstrues the import of the language utilized in R.C. 5523.31 barring the admissibility of the priority list. A review of the specific language used in that section indicates only a legislative intent to make the priority list inadmissible in *any* negligence action. R.C. 5523.31, standing alone, does not create a cause of action. Rather, it creates a rule of

admissibility governing negligence actions arising from the use of railroad crossings.

Second, and more fundamental to this cause, this court concludes that the mandatory provisions of R.C. 5523.31 ordering the Director of Transportation to survey all public crossings of railroads set forth a duty to the public and give rise to no liability for individual injuries in negligence. Cf. *Zuber v. Ohio Dept. of Ins.* (1986), 34 Ohio App.3d 42, 44, 516 N.E.2d 244, 245–246; *Metzger v. Superintendent of Building & Loan Assns.* (1986), 31 Ohio App.3d 212, 31 OBR 482, 510 N.E.2d 404; *Zebrasky v. Ohio Dept. of Transp.* (1984), 16 Ohio App.3d 481, 16 OBR 564, 477 N.E.2d 218. See, also, *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph two of the syllabus. Finally, plaintiff's argument that the failure of ODOT to perform a *continuous* survey, pursuant to R.C. 5523.31, gives rise to liability in this case fails for the same reason that plaintiff's complaint against PUCO fails to state a claim for relief. That is, although R.C. 5523.31 orders the director to perform a continuous survey of railroad grade crossings, that statute still vests in the director the discretion as to when and how priority ratings previously made may be changed. Since the gravamen of plaintiff's complaint with respect to ODOT is the failure to upgrade the priority rating of the subject grade crossing, no liability can attach if the director fails to exercise his discretion and rearrange the priority rating previously assigned to that crossing.

For all of the foregoing reasons, plaintiff's single assignment of error is overruled, and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

REILLY, BOWMAN and GEORGE, JJ., concur.

JOYCE J. GEORGE, J., retired, of the Ninth Appellate District, sitting by assignment.