OPINION
Plaintiffs-appellants, OHA: the Association for Hospitals and Health Systems, Meridia Health System, Ohio State Medical Association, Central Ohio Newborn, Inc., and Emergency Medical Physicians of Barberton, LTD., appeal from a judgment of the Ohio Court of Claims dismissing their claims against defendants-appellees, the Ohio Department of Human Services ("ODHS") and the Ohio Department of Insurance ("ODI") pursuant to Civ.R. 12(B)(6).
This action arises out of the operation of an Ohio Medicaid program known as "OhioCare." On January 12, 1999, plaintiffs filed a complaint in the Ohio Court of Claims alleging that ODHS and ODI were negligent in performing their duties with respect to OhioCare and that, as the result of such negligence, plaintiffs have each suffered losses in excess of $25,000.
According to the allegations in plaintiffs' complaint, Medicaid is a federal program, administered by participating states, which provides such states with federal grants to provide health care services to the elderly, the disadvantaged, and the poor. A state, which chooses to participate in Medicaid, must submit a plan which complies with various federal statutory guidelines. However, Section 1115 of the Social Security Act (Section 1315, Title 42 U.S. Code et seq.) gives the Secretary of the Department of Health and Human Services ("HHS") broad authority to grant waivers to Medicaid plans which do not fit within the standard guidelines. HHS may condition its granting of a Section 1115 waiver upon the state meeting certain terms and conditions in implementing its Medicaid plan.
In 1994, Ohio sought a Section 1115 waiver to operate OhioCare. HHS approved OhioCare in January 1995. Ohio's traditional Medicaid plan provides direct payments from the state to hospitals, physicians and other health care providers. In contrast, under OhioCare, state approved Managed Care Plans ("MCPs") contract with health care providers for the provision of health care services to their Medicaid eligible members. The state then pays these participating MCPs a set amount per month for each of their Medicaid eligible members. The MCPs, in turn, reimburse health care providers for services rendered to their Medicaid eligible members on a fee basis.
In granting Ohio a Section 1115 waiver for OhioCare, HHS imposed a number of terms and conditions upon the operation of OhioCare, including a requirement that the state conduct audits to monitor the financial condition of participating MCPs. The Section 1115 waiver document also required the state to submit an "operational protocol" for OhioCare to the Federal Health Care Financing Agency ("HCFA"). The operational protocol set forth the policy and plans for implementing OhioCare, including the details of how ODHS and ODI would monitor the financial condition of participating MCPs.
Plaintiffs specifically allege that, pursuant to the Section 1115 waiver and the operational protocol, ODHS and ODI were required: "(a) to submit periodic reports to HCFA during the first 6 months within which OhioCare was in operation, discussing, inter alia, the financial status of Medicaid MCPs; and (b) to monitor, on an on-going basis during the entire time the OhioCare program is in effect, the financial performance and quality assurance activities of each Medicaid MCP through internal and external audits, and to submit to the Office of Research and Demonstrations and the HCFA Regional Office copies of all financial audits performed on Medicaid MCPs."
According to plaintiffs, ODHS undertook certain obligations concerning the monitoring of the financial status of MCPs in the "Request for Proposal" ("RFP") it sent to MCPs to solicit their participation in OhioCare. Ohio submitted its RFP to HHS in seeking the Section 1115 waiver for OhioCare, "representing that the form and content of the RFP was part of the OhioCare program, and thus undertook to be bound by the RFP's terms. * * * ODHS specifically undertook, in section 10 of the RFP, to monitor MCPs and to refuse to extend or affirmatively to terminate an MCP's provider agreement in the event that the MCP is unable to demonstrate adequate equity per enrollee."
Plaintiffs assert that ODI is obligated by R.C. Chapters 1751, 3901 and 3903 to collect certain financial information from MCPs and to examine that information in order to ensure the continued solvency of MCPs, and that ODI undertook a duty, pursuant to the OhioCare plan, to forward this financial information to ODHS for it to use in monitoring the financial health of MPCs.
Finally, plaintiffs assert that ODHS's and ODI's duties to monitor MCPs are codified in Ohio Adm. Code 5101:3-26-06, 5101:3-26-07, 5101:3-26-09, and 3901-1-50.
With respect to plaintiffs' negligence claims, plaintiffs allege that they are medical service providers who provided services to Medicaid recipients enrolled in Personal Physician Care, Inc. ("PPCI"), an OhioCare approved MPCs. PPCI has been insolvent since at least December 31, 1996, and was placed into liquidation by ODI on August 20, 1998. Due to PPCI's insolvency, PPCI has failed to reimburse each of the plaintiffs for medical services provided to its members in amounts exceeding $25,000. ODHS and ODI were negligent in monitoring the financial status of PPCI in that they: (1) failed to ensure that PPCI timely submitted the financial reports it is required to file Cperiodically with ODI; (2) failed to exercise due care in monitoring the PPCI financial statements which were available; (3) failed to take other reasonable steps to monitor the financial condition of PPCI; (4) failed to satisfy the terms and conditions contained in the Section 1115 waiver relating to monitoring PPCI's financial condition; and (5) failed to ensure that PPCI satisfied the equity per enrollee requirement. Absent these acts of negligence by ODHS and ODI, plaintiffs allege that their losses would have been eliminated or at least significantly minimized as PPCI would not have become insolvent, or would have been removed from participation in OhioCare through non-renewal or termination of its contract before plaintiffs rendered the services to PPCI members for which they have not been reimbursed.
On February 23, 1999, ODHS and ODI filed motions pursuant to Civ.R. 12(B)(6) seeking the dismissal of plaintiffs' complaint on the grounds that it failed to state a claim upon which relief can be granted.
By an entry of April 30, 1999, the Court of Claims granted the motions of ODHS and ODI and dismissed plaintiffs' complaint for failure to state a claim upon which relief can be granted. Plaintiffs appeal therefrom assigning the following errors:
 1. The Court of Claims erred when it dismissed both counts of Plaintiffs' Complaint, citing only and improperly relying on the decisions in Anderson v. Ohio Department of Insurance (1991), 58 Ohio St.3d 215 and Zuber v. Ohio Department of Insurance, 34 Ohio App.3d 42
(Franklin Cty. 1986).
 2. The Court of Claims erred when it dismissed Plaintiffs' negligence count against The Ohio Department of Human Services ("ODHS") although the Complaint adequately pleaded a claim for negligence against ODHS.
 3. The Court of Claims erred when it dismissed Plaintiffs' negligence count against The Ohio Department of Insurance ("ODI") although the Complaint adequately pleaded a claim for negligence against ODI.
 4. The Court of Claims erred by improperly applying the standards of Civil Rule 12(B)(6) to the allegations of the Complaint.
Preliminarily, plaintiffs have filed a motion with this court in which they seek to have this court admit "newly discovered" evidence, and consider such evidence in determining this appeal. Specifically, plaintiffs seek to admit the testimony of Oscar Saffold, M.D., a former PPCI official, given in a separate proceeding in a different trial court.
In State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus, the Ohio Supreme Court held that a reviewing court cannot add matters to the record before it which were not before the trial court. Here, plaintiffs' motion to admit new evidence is particularly inappropriate, given that this matter is before us on an appeal from a dismissal pursuant to Civ.R. 12(B)(6), wherein our review is strictly limited to matters contained within the four corners of plaintiffs' complaint. Loveland Edn. Assn. v. Loveland Bd. of Edn. (1979),58 Ohio St.2d 31, 32; Basinger v. Pilarczyk (1997), 125 Ohio App.3d 74,76. In short, not only would it be improper for this court to allow plaintiffs to admit their newly discovered evidence, but, even if we could admit such evidence, the scope of our review in this matter would prevent us from considering it.
Plaintiffs' motion for the admission of newly discovered evidence is denied.
We now turn to plaintiffs' assignments of error. Because plaintiffs' four assignments of error all challenge the Court of Claims' dismissal of plaintiffs' complaint pursuant to Civ.R. 12(B)(6), they will be addressed together.
When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, an appellate court must independently review the complaint to determine if dismissal was appropriate. McGlonev. Grimshaw (1993), 86 Ohio App.3d 279, 285. The appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. Id.
Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. York v. Ohio State Highway Patrol (1991),60 Ohio St.3d 143, 144. In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190, 192.
The only explanation provided by the Court of Claims for its Civ.R. 12(B)(6) dismissal of plaintiffs' complaint is the court's citation toAnderson v. Ohio Dept. of Ins. (1991), 58 Ohio St.3d 215, and Zuber v.Ohio Dept. of Insurance (1986), 34 Ohio App.3d 42. Because bothAnderson and Zuber involve application of the public duty doctrine, the Court of Claims' citation to these cases suggests that the court relied upon that doctrine in dismissing plaintiffs' complaint.
The public duty rule holds that, when a duty imposed by law upon a public official is owed to the public in general, the inadequate or negligent performance of that duty gives rise to only a public, as opposed to a private, injury. Sawicki v. Ottawa Hills (1988),37 Ohio St.3d 222, 230. Public injuries, unlike private injuries, will not support a cause of action for damages. Sawicki, supra. The public duty rule applies to uniquely governmental functions, and precludes a public official's legal obligations from supporting an action for negligence. Franklin v. Columbus (1998), 130 Ohio App.3d 53, 58.
The public duty rule's bar to a private cause of action may be avoided if it can be shown that the "special duty" exception applies. Id. In order to establish a special duty, it must be shown that: (1) the government entity assumed an affirmative duty to act on behalf of the injured party through either words or promises; (2) agents of the government entity possessed knowledge that inaction could lead to harm; (3) there was some form of direct contact between the government entity's agents and the injured party; and (4) the injured party justifiably relied upon the government entity's affirmative undertaking. Sawicki,supra, at paragraph four of the syllabus; Hurst v. Ohio Dept. of Rehab. Corr. (1995), 72 Ohio St.3d 325, 326. A plaintiff who establishes a special duty not only avoids the operation of the public duty rule, but also automatically establishes the duty element of a negligence action.Franklin, supra.
In the present case, plaintiffs argue that the public duty rule does not bar their claims against ODHS and ODI for several reasons. First, plaintiffs contend that the public duty rule does not apply to ODHS's and ODI's duties to monitor the financial condition of OhioCare MCPs because these duties were not imposed by law, but were voluntarily assumed by the state when it sought the Section 1115 waiver for OhioCare. Specifically, plaintiffs assert that, because the state was under no legal obligation to establish OhioCare, its decision to do so was voluntary and, therefore, ODHS and ODI voluntarily assumed their duties to monitor OhioCare MCPs.
Plaintiffs are correct that the public duty rule has no application where the sole basis for the governmental duty at issue is its voluntary assumption by the government entity. See Sawicki, supra, at 227, 232. However, plaintiffs' contention that any government activity taken in furtherance of OhioCare is voluntarily assumed because the state was under no obligation to establish OhioCare is without merit.
Initially, in both their complaint and brief, plaintiffs assert that ODHS's and ODI's duties to monitor MCPs are imposed by various sections of the Ohio Administrative Code. Specifically, plaintiffs' complaint asserts that ODHS's monitoring duties are imposed by Ohio Adm. Code5101:3-26-06, 5101:3-26-07, and 5101:3-26-09, and that ODI's monitoring duties are imposed by Ohio Adm. Code 3901-1-50. Nonetheless, plaintiffs contend that, because the state was under no obligation to establish OhioCare in the first instance, the adoption of these Ohio Administrative Code sections was voluntary and, accordingly, the assumption of the monitoring duties themselves was voluntary. We disagree.
Acceptance of plaintiffs' "voluntary assumption" argument would create an exception to the public duty rule which would swallow the rule itself. Under plaintiffs' definition of "voluntary assumption," negligence in the provision of most state government services would not be subject to the public duty rule, as the state was, in the case of most of the services it provides, under no legal obligation to provide such services prior to its "voluntary" adoption of statutes and regulations imposing such duties upon itself.
Although the state was not obligated to establish the OhioCare program, once it determined to do so and promulgated regulations in furtherance of the program, the duties imposed upon ODHS and ODI by those regulations are not voluntarily assumed, but are imposed by law.
Plaintiffs also contend that the public duty rule does not apply to ODHS's and ODI's duties to monitor OhioCare MCPs, because the public duty rule applies only to duties imposed by statute and not to duties imposed by administrative regulations. The cases cited by plaintiffs in support of this proposition, Sawicki; Brown v. Akron (Mar. 11, 1992), Summit App. No. 15053, unreported; and Metzger v. Superintendent of Building andLoan Assns. (1986), 31 Ohio App.3d 212, do not actually support it. WhileSawicki, Brown, and Metzger do indicate that the public duty rule applies to statutorily imposed duties, they do not stand for the proposition that the public duty rule is inapplicable to duties imposed by administrative rules. In fact, both Sawicki and Brown contain language that suggests that the public duty rule is applicable to all duties "imposed by law."Sawicki, supra, at 230; Brown, supra. Further, we can conceive of no logical reason why the public duty rule should apply to duties imposed directly by statute, but not to duties imposed by administrative regulations properly promulgated pursuant to an enabling statute. Therefore, we conclude that the public duty rule does apply to duties imposed by the Ohio Administrative Code.
Because legal duties established by administrative regulations are legally imposed duties rather than voluntary assumed duties, and because the public duty rule is applicable to such regulatory imposed duties, plaintiffs' claims against ODHS and ODI are barred by the public duty rule, unless plaintiffs can establish that ODHS or ODI owed them a "special duty" to monitor the fiscal integrity of PPCI for plaintiffs' benefit.
With respect to ODHS, plaintiffs do not even attempt to establish the existence of a special duty, and our review of plaintiffs' complaint and the various statutes and administrative code sections cited by plaintiffs have revealed nothing that would support a finding that ODHS owed plaintiffs a special duty.
With respect to ODI, plaintiffs assert that R.C. 3903.02 imposes a "special duty" on ODI to monitor MCPs for the benefit of the creditors of MCPs, such as themselves. R.C. 3903.02(D) provides that the purpose of R.C. Chapter 3903 is "the protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and mangers of insurers." (Emphasis added.) Accordingly, plaintiffs argue that the purpose of Ohio Adm. Code 3901-1-50, which plaintiffs assert imposes the duty to monitor MCPs upon ODI, and which was promulgated in furtherance of the purposes of R.C. Chapter 3903, is also for the protection of creditors like themselves.
Although plaintiffs' argument that R.C. 3903.02(D) imposes a special duty on ODI has considerable appeal, the Ohio Supreme Court specifically has rejected this argument. In Anderson, at 219, the Ohio Supreme Court held that R.C. 3903.02(D) "was neither designed nor intended to create a special duty to a private individual to use as the basis for a claim of damages."
Because plaintiffs have failed to establish the existence of a special duty owed to them by ODHS or ODI in carrying out their lawfully imposed duties to monitor OhioCare MCPs, plaintiffs' claims against ODHS and ODI are barred by the public duty rule. Accordingly, plaintiffs can establish no set of facts which will permit them to prevail on their claims against ODHS and ODI.
Plaintiffs' four assignments of error are overruled.
Having denied plaintiffs' motion for the admission of newly discovered evidence, and having overruled plaintiffs' four assignments of error, we affirm the judgment of the trial court.
 _____________________ McCORMAC, J.
PETREE and BROWN, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.