[Cite as *King v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-5559.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOHN D. KING

      Plaintiff

      v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

      Defendant

Case No. 2013-00664

Magistrate Robert Van Schoyck

DECISION OF THE MAGISTRATE

{¶1} Plaintiff, an inmate in the custody and control of defendant, brought this action for negligence arising out of injuries he sustained from falling down a set of stairs at the Chillicothe Correctional Institution (CCI) on August 31, 2013. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} Plaintiff, who testified that he has been imprisoned since 1985 for grand theft, robbery, and escape and was later convicted while in prison for theft of a weapon and possession of a weapon under disability, stated that he had been at CCI for about one year before the accident, and that since July 23, 2013, he had been assigned to the disciplinary segregation housing unit where the accident took place.

{¶3} Plaintiff testified that the accident occurred on August 31, 2013, as he was returning from the showers on the third floor range to his cell on the bottom range. Plaintiff explained that, as was the routine on days when inmates in the unit were permitted to shower, a corrections officer went cell to cell asking each inmate if he wanted to shower. Plaintiff stated that he replied in the affirmative when it was his turn and, after being placed in restraints consisting of handcuffs attached to a belly chain, he proceeded down the hallway to the end of the cells. Plaintiff explained that at that

point a corrections officer typically would direct each inmate where to shower, and that on this particular day an officer, whom he believes was probably Corrections Officer Andre, told him "third floor." Plaintiff stated that he understood this as an order, such that he had no choice but to go upstairs and shower on the third floor range. According to plaintiff, he showered about five times a week, and there had been occasions while living in this unit for the past several weeks when, depending on how busy the showers were, he had been directed to shower on a range other than his own.

{¶4} Plaintiff testified that he proceeded up the two sets of stairs to the third floor range, and then to the showers, where he believes Corrections Officer Hall removed his restraints and admitted him into the shower. Plaintiff stated that once he was done showering, the restraints were reapplied and he walked back to the stairs. Plaintiff, who stated that he was wearing shower shoes throughout, related that as he descended down the set of stairs from the third floor range to the second floor range, his ankle gave out and bent inward when he was on approximately the third step from the top. Plaintiff testified that he was not able to grab the handrail or otherwise break his fall because of the restraints, and that he fell about 12 steps down to the landing at the foot of the stairs, suffering injuries in the process. Plaintiff recalled that Corrections Officer Newland was at the officers' desk near the stairwell and that he believed Corrections Officer Andre was on either the bottom or second floor range at that time. Plaintiff stated that one of the officers summoned medical assistance, and that he was subsequently transported to an outside hospital for treatment.

{¶5} Plaintiff attributed the fall primarily to the disorienting side effects of Elavil, a psychotropic medication, and also to the fact that his feet were wet. Plaintiff explained that he was being treated for anxiety and depression at the time, including taking a twice daily dosage of Elavil since September 2012, and he had found that Elavil caused him to become disoriented at times. Plaintiff added that the reason he was in the segregation unit was that he had slit his wrist on July 23, 2013, which violated

institutional rules against self-mutilation; plaintiff offered into evidence a corresponding incident report prepared by CCI personnel.   (Plaintiff's Exhibit 1.)   Plaintiff also stated that he was taking the pain-reliever Ultram at the time due to a recent operation on his finger.   According to plaintiff, most of the inmates in segregation who were on any kind of medication were assigned to cells on the bottom range.

{¶6} In spite of the side effects plaintiff experienced from Elavil, he acknowledged that he did not ask for any assistance in negotiating the stairs.   Plaintiff also stated that he was not aware of anyone else having fallen on the stairs for any reason in the time that he was assigned to the segregation unit.

{¶7} Corrections Officer Michael Hall testified that he has worked at CCI for about four years, and that in August 2013 he was assigned to work the second shift in Segregation Unit 1.   Hall explained that the procedure for facilitating inmates' showers in that unit is to go cell to cell and ask the inmates if they want to shower, and, if they do, they are placed in restraints one at a time.   With respect to restraints, Hall further explained that there is an institutional security policy applicable to the segregation unit requiring that all inmates, except for porters, must wear handcuffs attached to a belly chain whenever they are outside their cells, notwithstanding when they are in the showers.   Hall stated that, by design, this method of restraint allows for little movement of the hands, as the belly chain is supposed to be tight enough that it cannot be slipped off but not so tight as to inhibit breathing.

{¶8} According to Hall, once the restraints have been applied, the inmates are directed to the nearest available shower, but they are not forced to shower on another range.   Hall explained that if an inmate notifies an officer of a health or safety concern about climbing the stairs, he can wait on a bench or return to his cell until a shower on his range becomes available.

{¶9} Hall stated that he does not specifically remember talking with plaintiff about showering on the day in question, but he does remember that it was a busy day when

many inmates showered.  Hall testified that he believes he and Corrections Officer Andre were responsible that day for applying and removing restraints for the inmates as they got in and out of their cells and the showers, and that Corrections Officer Newland was stationed at the officers' desk.  Hall testified that he believes he was on the third floor range when plaintiff fell, as he remembers looking down the stairs and seeing plaintiff lying motionless at the bottom of the stairs on the second floor range.

{¶10} Hall testified that he did not know about any medications plaintiff was taking, and that nurses who administer inmates their medication do not discuss such information with him.  Hall also testified that he did not know the reason why plaintiff had been placed in the segregation unit.

{¶11} Corrections Officer Ryan Andre testified that he has been employed with defendant for approximately four years, and now works at the Southern Ohio Correctional Facility.  Andre stated that in August 2013, however, he worked the second shift in Segregation Unit 1 at CCI.  Andre explained that inmates were offered showers, one at a time, and if they accepted they were placed in restraints one at a time.  According to Andre, institutional security procedures required that when inmates left their cells in the segregation unit they were to be handcuffed with their hands in front of the body, and the handcuffs were to be connected to a belly chain.

{¶12} Andre testified that inmates were directed to a particular shower, generally being one on their own range if one was available, but that they were not required to go to other ranges to shower.  Andre related that he and Corrections Officer Hall were the ones directing inmates to the showers on the day in question, and that once an inmate arrived at the shower, he and Hall were also responsible for removing the inmate's restraints.

{¶13} Andre could not recall if he let plaintiff out of his cell or removed his restraints at the shower on the day in question, nor did he have any recollection of talking to plaintiff at all about showering that day.  And, Andre stated that he did not

know any information about medications plaintiff was taking, or why he had been placed in the segregation unit.   Andre testified that when the accident occurred, he was standing about one foot from the stairwell on the second floor range looking down to Corrections Officer Newland, who was on the bottom range, and that he believes Corrections Officer Hall was on the third floor range at that point.   Andre recalled that plaintiff landed at the foot of the stairs near the spot where he stood, but that he had not been aware plaintiff was coming down the stairs and did not witness the fall.   According to Andre, he then told Newland to summon medical assistance.   Andre remembered a nurse responding to the scene, and plaintiff eventually being transported out of the unit.   "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom."   *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981).   "In the context of a custodial relationship between the state and its prisoners, the state owes a common law duty of reasonable care and protection from unreasonable risks." *Rose v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-1360, 2005-Ohio-3935, ¶ 9.   "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk."   *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 17. "Reasonable or ordinary care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances."   *Antenori v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-688 (Dec. 18, 2001).   "Prison inmates must also exercise reasonable care to ensure their own safety."   *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15.

{¶14} Upon review of the evidence adduced at trial, the magistrate finds that the greater weight of the evidence does not establish that defendant breached its duty of care toward plaintiff.   The magistrate finds that the corrections officers on duty on the day of the accident neither knew nor had reason to know that it would be hazardous for

plaintiff to negotiate the stairs unescorted. The magistrate finds that the corrections officers did not know of any medications plaintiff was taking or any ailment he was suffering from, much less any side effects, symptoms, or impairments he was experiencing that may have made it more dangerous for him to negotiate the stairs. While plaintiff contends that officers should have at least known from his bottom range cell assignment that he was taking some kind of medication or receiving some kind of mental health care, the magistrate finds that the mere fact plaintiff was on some medication which the officers knew nothing about or receiving care for a mental health issue which they knew nothing about would not have been sufficient to alert them to any heightened risk associated with plaintiff's use of the stairs, and, regardless, it was not proven that the bottom range was exclusively populated by inmates taking medication or receiving mental health care.

{¶15} The magistrate also finds that defendant's security policies required all inmates assigned to the segregation unit at CCI to wear handcuffs attached to a belly chain while outside their cells or the shower, and that defendant is immune from liability for its decision to adopt this policy. *See Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984) ("[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."); *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 16-17. Furthermore, the magistrate finds that it was not unreasonably dangerous, in and of itself, for inmates in general to negotiate the stairs unescorted while wearing such restraints.

{¶16} Additionally, the magistrate finds that plaintiff's injuries proximately resulted from his own negligence insofar as he did not notify officers of any hazard associated

with his negotiating the stairs by himself, and also to the extent that he did not dry his feet off before he descended the stairs after showering. The magistrate finds that plaintiff knew he had a tendency to become disoriented and suffer impaired motor skills due to his use of Elavil, but despite the danger this added to his negotiating the stairs alone, he did not request for an officer to escort him on the stairs or request to use a shower on his own range such that he could avoid the stairs altogether. Indeed, the magistrate finds that officers in the segregation unit routinely allowed inmates to wait for a shower to become available on their own range if the inmate expressed a concern for his health or safety relative to negotiating the stairs.

{¶17} Based on the foregoing, the magistrate finds that plaintiff has failed to prove his claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶18} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Richard F. Swope                          Stephanie D. Pestello-Sharf
6480 East Main Street, Suite 102          Velda K. Hofacker
Reynoldsburg, Ohio 43068                  Assistant Attorneys General
                                          150 East Gay Street, 18th Floor
                                          Columbus, Ohio 43215-3130

**Filed December 30, 2014**
**Sent To S.C. Reporter 12/31/15**